HELENE B. DAVIS, Plaintiff-Appellee, *v.* JOSEPH H. DAVIS, Defendant-Appellant

NO. 8334

(FC-D NO. 86592)

NOVEMBER 10, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendant Joseph H. Davis (Father) appeals the family court's order denying his request for termination or reduction of his sup-

port obligations with respect to his daughter (Daughter) and requiring him to pay all of plaintiff Helene B. Davis' (Mother) attorney's fees and costs. We reverse.

The parties' Daughter was born on May 14, 1962 and their son (Son) on March 23, 1967. Mother filed a complaint for divorce on December 14, 1973.

By a stipulation and order filed on March 25, 1976, Father agreed to pay directly to Mother $260.91 per week, of which 61.9% was spousal support and 38.1% was child support. This payment was to commence January 1, 1976 and continue throughout the pendency of divorce proceedings.

On May 13, 1976, Father and Mother entered into a Property Settlement Agreement in which, *inter alia:* Father agreed to pay spousal support of $600.00 per month for 16 months from June 1, 1976 through September 30, 1977 or until Mother's death or remarriage, whichever occurred first; to pay child support of $225.00 per month per child commencing June 1976 and continuing until further order of the court, "with a review of the subject to be scheduled with the Court as of September, 1977"; and to "continue to pay the cost of private schooling for the children. . . ." At that time, both children were attending Maryknoll School, with tuition of $1,200.00 each.

Mother was awarded a residence in Virginia; Father was awarded an Aukai Street residence in Honolulu; and Father agreed to pay to Mother $31,000.00.

On May 13, 1976, the court below filed its Decree Granting Absolute Divorce and Awarding Child Custody which approved and incorporated the Property Settlement Agreement.

The parties were unable to obtain a review hearing date in September, so on October 25, 1977, Mother filed a Motion for Review of Child Support. Thereafter the court's minutes indicate as follows:

11-20-77 "Pre-trial conference. Stipulation and order to enter."

12-08-78 "Continued until moved on."

12-22-78 "Child support to be reduced $25/mo/child for 6 months to 7/1/79. Educational trust fund to be set up by Deft. All other matters agreed upon."

On June 4, 1979, the court below filed a Stipulation Re: Child

Support, Alimony and Higher Education; Order.

In relevant part, it provided as follows:

1. That child support for the minor children of the parties, SABINE GENEVIEVE DAVIS, born May 14, 1962, and VINCENT JOSEPH DAVIS, born March 23, 1967, shall be increased to the sum of $275.00 per month per child for a total of $550.00 per month, payable directly to Plaintiff in equal bi-weekly installments of $253.15 commencing on October 1, 1977, and continuing until further order of the Court; provided that, during the period January 1, 1979 through June 30, 1979, when defendant relocates to Arizona, the child support shall be $250.00 per child per month for a total of $500.00 per month and shall thereafter be increased to $550.00 per month total.

2. That the expenses of the higher education for each child of the parties for a minimum of four (4) years and such periods thereafter as is reasonable, provided that such child shall be enrolled as a full time student, shall be paid as follows:

(a) If either or both of the children attend a public college or a state university located in the state in which Plaintiff resides, Defendant shall pay all costs of education including tuition, fees, and books, plus $200.00 per month per child for incidental costs.

(b) If either or both of the children attend a state or other public college or university located outside the state in which Plaintiff resides, Defendant shall pay all costs of tuition, fees, books, room and board, and Plaintiff shall pay all other reasonable incidental costs including the fare necessary to transport the children to and from said college or university and Plaintiff's residence.

(c) If either or both of the children attend a private college or university, Defendant shall pay tuition, fees, books, one-half (½) of room and board, and Plaintiff shall pay one-half (½) of room and board and all other reasonable incidental costs including the fare necessary to transport the children to and from said private college or university and Plaintiff's residence.

*    *    *    *

4. In order to provide a reserve for the costs of the children's education indicated in paragraph 2 herein, Defendant shall es-

tablish a trust account, and, commencing January 1, 1978 shall pay into said account the monthly sum of TWO HUNDRED FIFTY and NO/100 DOLLARS ($250.00), from which sums so paid in, to the extent sufficient for those purposes, the costs set out in paragraph 2 shall be paid.

\*   \*   \*   \*

In 1978, Father purchased a Kukui Street apartment in Honolulu. In September 1979, Daughter entered Boston University (BU) as a full-time student.

In December 1979, Mother purchased an apartment at the Contessa in Honolulu. She used the proceeds from the sale of her Virginia property as down payment, and Father co-signed a note with Mother to finance the remaining $60,000.00.

Commencing April 1980, Father ceased to pay for Daughter under paragraph 1 of the June 4, 1979 stipulation and order. On April 29, 1980, Mother filed an Order to Show Cause after Order or Decree (OSCAOD), asking that Father be held in contempt for failure to satisfy his obligations under paragraph 1.

On May 30, 1980, Father filed an OSCAOD asking that his obligation, if any, to pay child support for Daughter under paragraph 1 of the June 4, 1979 stipulation and order be terminated now that he was paying for Daughter under paragraph 2(c). He based his request on alternate grounds: (1) the clear language of the stipulation and order required termination or (2) a change in circumstances compelled it.

The two OSCAODs were heard on June 3, 1980.

On July 17, 1980, the court below filed its Decision and Order in which it found, *inter alia:*

1. \* \* \* [T]he application of the provisions contained in paragraph 2 does not cancel the continuing obligation of the [Father] to provide for child support as indicated in paragraph 1.

\* \* \*

3. The [Mother] and the [Father] appear to have agreed as to the matters that attend their son Vincent.[1]

4. The [Father] failed to establish \* \* \* a material change in financial circumstances.

---

[1] The lower court should have ordered this agreement into effect.

and ordered, *inter alia:*

A. The [Father's] order to show cause is dismissed.

B. The [Father] shall forthwith pay to the [Mother] the arrearages as indicated above and make current any other arrearages that may have accrued since the date of the hearing conducted on June 3, 1980.

C. The [Father] shall forthwith pay to the [Mother's] attorney all of the [Mother's] reasonable attorney's fees and costs. [Footnote added.]

The amount of the reasonable attorney's fees and costs were not determined.

Father appeals A, B, and C above. At oral argument, he properly conceded that his obligations under paragraph 2(c) of the June 4, 1979 stipulation and order are independent of his obligations under paragraph 1. In light of the interpretation rule of *Nakata v. Nakata*, 3 Haw. App. 51, 641 P.2d 333 (1982), he had no other choice. Consequently, the only issues before us are whether the family court erred (1) in denying Father's request for reduction of his support obligations with respect to Daughter and (2) in requiring Father to pay all of Mother's reasonable attorney's fees and costs incurred in defending against the request.[2]

A petition to modify an order for child support cannot be based on the same set of facts that were before the court when the original order was made. There must have been a substantial and material change in the relevant circumstances which were before the court when it made the original order.[3] HRS § 580-47(c) (1976, as amended);[4] 24 AM. JUR.2d, *Divorce and Separation,* § 846 (1966);

---

[2] In light of our decision in this case, we do not reach the attorney's fees and costs issue. However, we direct attention to HRS § 580-47 (1976, as amended) and to *DeMello v. DeMello,* 3 Haw. App. 165, 646 P.2d 409 (1982).

[3] Consequently, it is very important that the record contain the material circumstances which are before the court when it enters an order.

[4] § 580-47 *Support orders; division of property.* * * *

(c) No order entered under the authority of subsection (a) of this section or entered thereafter revising so much of such an order as provides for the support, maintenance and education of the children of the parties shall impair the power of the court from time to time to revise its orders providing for the support, main-

*Annot.,* 89 A.L.R.2d 7 (1963). However, the fact that there is a sufficient change to overcome the *res judicata* limitation does not mean that a modification should be made.

Consequently, a petition for modification of child support presents the trial court with three questions:

> 1. Has there been a substantial and material change in the relevant circumstances so as to permit consideration of the modification request?
> 2. Should there be a modification?
> 3. What should the modification be?

In this case, since the request is for reduction or termination of Father's obligation to contribute support for Daughter, the relevant circumstances are Father's decreased ability to contribute, Mother's increased ability to contribute, and Daughter's decreased need for financial support.

In the case at bar, it appears that the lower court decided question 1 adversely to Father and never reached questions 2 and 3.

The standard by which we review the family court's decision on question 1 is different from the standard by which we review its decision on questions 2 and 3. *Compare Allen v. Allen,* 2 Haw. App. 519, 634 P.2d 609 (1981), *rev'd,* 64 Haw. 553 (1982), with *Ahlo v. Ahlo,* 1 Haw. App. 324, 619 P.2d 112 (1980). In our review of the answer to question 1, the right/wrong standard is applicable.[5] In our review of the answer to questions 2 and 3, the manifest abuse of wide discretion standard is applicable.[6]

Thus, the issue before us is whether the lower court was right or wrong when it decided that there had not been a substantial and material change in the relevant circumstances between June 4, 1979 and July 17, 1980 so as to permit consideration of Father's request

---

tenance and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to such support, maintenance and education.

\* \* \*

[5] Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it.

[6] For a definition of "abuse of discretion," *see State v. Faulkner,* 1 Haw. App. 651, 624 P.2d 940 (1981).

for reduction of his support obligations with respect to Daughter. We hold that it was wrong.

The evidence is not as complete as it should be. However, it indicates that when the court below filed the June 4, 1979 stipulation and order, Father, as a federal government employee, was a GS15, step 8; that prior to January 1979, he was receiving gross wages of $2,016.30, including COLA, every two weeks ($4,368.65 per month); that in January 1979, he had been assigned by his employer to Arizona and had lost his entitlement to COLA; that he owned and was renting out two residences in Hawaii (the Kukui Street apartment and the Aukai Street residence); that he was receiving monthly payments from the sale of a Kailua residence; that he had purchased a residence in Arizona; that Mother was receiving gross wages of $477.50 twice a month ($955.00 per month); that Daughter was 17 years of age, a senior at Maryknoll ($1,200.00 annual tuition) and planning to attend BU; and that Son was 12 and attending Punahou ($2,500.00 annual tuition).

When the family court filed its July 17, 1980 Decision and Order, Father was a GS14, step 10;[7] he was receiving gross wages of $1,953.00 (including $217.00 COLA) every two weeks ($4,231.50 per month); he was receiving $160.00 per month from the sale of the Kailua residence and $80.00 per month from the sale of his Arizona residence; he was living in Honolulu in his Kukui Street apartment and renting his Aukai Street residence for $850.00 net before payment of mortgages; Father's net worth was in excess of $300,000.00 and Mother's was less than $100,000.00; Mother was receiving gross wages of $687.88 twice a month ($1,375.76 per month); Son was 13 and planning to spend the next school year without tuition requirements but with room and board requirements in Switzerland with Mother's father;[8] and Daughter was 18, had finished her first year at BU, had returned for the summer, was incurring uninsured medical

---

[7] Father testified that in March 1980, he accepted a reduction in pay grade from GS15 to GS14 in order to facilitate his desire to return to Hawaii to be closer to Son. There is no suggestion in the record of any improper motive for the move.

[8] Father testified that since he did not have to pay Punahou's $2,500.00 tuition, he was willing to pay Son's $1,770.00 round trip air fare to and from Switzerland and to pay Son's monthly child support directly to Switzerland.

expenses, and her expenses for the 1979-80 school year had been paid as follows:

| Item | Father | Mother[9] |
|---|---|---|
| Tuition | 4,720.00 | |
| Room | 622.50 | 622.50 |
| Board | 517.50 | 517.50 |
| Air fare, round trip | | 700.00 |
| Books | 369.24 | |

The evidence indicates that Father's ability to contribute has decreased; that Mother's ability to contribute has increased; and that we now have precise rather than estimated information about Daughter's need.

In close cases such as this, we give the benefit of the doubt to the party seeking a hearing on the merits. Consequently, we hold that Father has established a sufficient basis for a hearing and a decision on the merits of his application for a reduction of his obligation. We do not decide whether it would or would not be an abuse of discretion for the family court to grant or deny his request for reduction.

Reversed and remanded.

*W. Patrick O. Conner* for defendant-appellant.

*T. Lynne Wasson* for plaintiff-appellee.

---

[9] Mother testified that when Daughter left for BU in August 1979, Mother gave her an additional amount of "about" $700.00 "which she spent on clothing because she didn't have any winter clothes at all" and that Mother sent her a monthly allowance of $115.00.