KATHRYN De SILVA, DOUGLAS De SILVA, DAVID De SILVA, PATRICIA MILLS, LESLIE MILLS NATH, and JACQUELINE MILLS, Plaintiffs–Appellees, v. BLAIR F. BURTON, in his capacity as Executor and individually, Defendant–Appellant, and NEIL F. HORTON, in his capacity as Special Administrator of the Estate of Edith De Silva, and JAMES THOMAS LAWRENCE, Defendants–Appellees, and WILLIAM P. JAEGER, in his capacity as Executor and individually, Defendant

NO. 15369

(CIV. NO. 89–1578)

JULY 13, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

## OPINION OF THE COURT BY BURNS, C.J.

Defendant Blair F. Burton (Burton), in his individual capacity, appeals the circuit court's April 17, 1991 order requiring him to pay $3,600 to a co–party as a sanction for Burton's violation of Hawai'i Rules of Civil Procedure (HRCP) Rule 11. We affirm.

### FACTS

Pursuant to a November 8, 1968 deed registered in land court, Oliver De Silva (Oliver) and Edith De Silva (Edith), husband and wife, owned 4335 Kaikoo Place, Black Point, Oahu, Hawai'i, as tenants by the entirety. Oliver died on July 5, 1987. Edith conveyed 4335 Kaikoo Place to defendant James Thomas Lawrence (Lawrence) by deed dated July 18, 1988. Burton authored the conveyance documents. Edith died in California on January 13, 1989.

Plaintiff Patricia Mills is Oliver's daughter. Plaintiffs Kathryn De Silva, Douglas De Silva, David De Silva, Leslie Mills Nath, and Jacqueline Mills are Oliver's grandchildren. Contending that Edith's conveyance to Lawrence violated Oliver's and Edith's January 29, 1986 contract to execute mutual and reciprocal wills and the wills Oliver and Edith executed pursuant to their contract; that the sales price was substantially below the fair market value; and that the transaction was motivated by an intent to defraud plaintiffs, plaintiffs filed their complaint on May 26, 1989. They sued Burton, who is a lawyer, individually and as co–executor of Oliver's estate. They sued Neil F. Horton (Horton), who is a lawyer, solely, as the special administrator of Edith's California estate.

On September 5, 1990, Horton, acting in his capacity as special administrator, filed a cross–claim against Lawrence and Burton. In essence, Horton's cross–claim sided with the plaintiffs and sought indemnification from Lawrence and Burton. On September 28, 1990, Burton filed a cross–claim against Horton, individually and as special administrator, alleging, in relevant part, as follows:

## COUNT ONE

Now that cross–complainant HORTON is aware of the present state of California law and that no transmutation of joint tenancy property occurred, his filing of his Cross–Claim is legal malpractice on his part and causing damages to this cross–defendant.

## COUNT TWO

Under the California Civil Code, the contract of EDITH De SILVA selling the Hawai'ian property to JAMES LAWRENCE, and Attorney Horton's wrongful conduct and legal malpractice, this answering cross–defendant has incurred substantial expenses and damages and will continue to incur such expenses in the future and Attorney Horton is liable for attorney's fees and costs in this matter.

WHEREFORE, Cross–Defendant Burton prays as follows:

\* \* \*

2. For a judgment awarding damages, attorney's fees, and costs against Cross–Claimant Horton individually and as Special Administrator for the Estate of EDITH De SILVA.

Although plaintiffs' complaint sued Horton solely as special administrator, Burton's cross–claim sought relief from Horton

individually and as special administrator. Since Horton in his individual capacity was not a party in the case, HRCP Rule 13(g) did not authorize Burton to file a cross–claim against Horton in his individual capacity. On October 18, 1990, Horton, in his individual capacity, filed a motion to dismiss Burton's cross–claim against him. The circuit court orally granted the motion on December 6, 1990. It entered the order on February 28, 1991.

On November 26, 1990, Horton, as special administrator, filed a motion for summary judgment with respect to Burton's September 28, 1990 cross–claim against him. The circuit court orally granted the motion on January 16, 1991. It entered the order on March 22, 1991.

On January 23, 1991, Burton wrote a letter to the court in which he stated, in relevant part, as follows:

> Perhaps I allowed my natural resentment to interfere with my judgment. Obviously there is no relationship with Attorney Horton and me which would permit me to complain of his action either as a representative or an individual in a malpractice allegation. Consequently I have no objection to dismissal of a claim for either or both.

On February 8, 1991, Horton, as special administrator, moved for the imposition of HRCP Rule 11 sanctions against Burton because of Burton's September 28, 1990 cross–claim against Horton and Burton's December 4, 1990 memorandum in opposition to Horton's October 18, 1990 motion to dismiss. The reference to the December 4, 1990 memorandum was irrelevant because Horton's October 18, 1990 motion to dismiss related solely to Horton in his individual capacity. However, the reference to Burton's September 28, 1990 cross–claim was relevant. The circuit court orally granted the motion on March 5, 1991. Its April 17, 1991 order required Burton, as an individual, to pay to Horton, as special administrator, the sum of $3,600. That amount

was approximately the amount of the attorney fees that Horton, as special administrator, incurred defending against Burton's September 28, 1990 cross–claim.

## APPLICABLE RULE

HRCP Rule 11, which is virtually identical with Rule 11 of the Federal Rules of Civil Procedure, states in relevant part as follows:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

## DISCUSSION
### I.

This appeal challenges the April 17, 1991 order granting Horton's February 8, 1991 motion seeking the imposition of HRCP Rule 11 sanctions. That order imposed an HRCP Rule 11 sanction on Burton solely because of Burton's September 28, 1990 cross–claim against Horton as special administrator. Contrary to Burton's argument, Horton's September 5, 1990 cross–claim

against Burton and the fact that Horton did not include his motion for HRCP Rule 11 sanctions in his October 18, 1990 motion to dismiss and/or his November 26, 1990 motion for summary judgment are irrelevant and/or inconsequential. Burton's September 28, 1990 cross–claim was dismissed orally on December 6, 1990 and in writing on February 28, 1991. Therefore, Horton's February 8, 1991 motion seeking sanctions was timely.

## II.

The first issue, which we raise *sua sponte*, is whether the April 17, 1991 order was appealable upon its entry notwithstanding the fact that all claims against all parties have not been finally decided and no HRCP Rule 54(b) determination and direction has been entered. Our answer is yes. The April 17, 1991 order is a collateral final order. *Harada v. Ellis*, 60 Haw. 467, 591 P.2d 1060 (1979); *MDG Supply, Inc. v. Diversified Investments, Inc.*, 51 Haw. 480, 463 P.2d 530 (1969); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1337 (2d ed. 1990).

## III.

The second issue is, what is the applicable standard of review? A thorough analysis of this issue is contained in Michael R. Annis, Note, *Civil Procedure*: *Cooter & Gell v. Hartmarx Corp.: An Analysis of Rule 11 and Its Appropriate Standard of Review*, 44 OKLA. L. REV. 495 (1991).

In *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir. 1986), the Ninth Circuit answered this issue as follows:

\* \* \*

Appellate review of orders imposing sanctions under Rule 11 requires a number of separate inquiries. If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly

erroneous standard. If the legal conclusions of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo*. Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard. [Footnote omitted.]

\* \* \*

We agree with *Zaldivar* that the question whether a document "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" is a question of law. Under the three–tiered standard of review, this question is reviewed under the *de novo* standard, which we have labeled the right/wrong standard. *See Davis v. Davis*, 3 Haw. App. 501, 506 n.5, 653 P.2d 1167, 1171 n.5 (1982).

However, in ***Cooter & Gell v. Hartmarx Corp.***, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), the United States Supreme Court adopted a unitary standard and rejected the *Zaldivar* standard stating,

> We reject petitioner's contention that the Court of Appeals should have applied a three–tiered standard of review. Rather, an appellate court should apply an abuse–of–discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.

496 U.S. at 405, 110 S. Ct. at 2461, 110 L. Ed. 2d at \_\_\_.

The Supreme Court stated the following reasons in support of its holding:

> [T]he district court is better situated than the court of appeals to marshall the pertinent facts and apply the fact–dependent legal standard mandated by Rule 11.

* * *

The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation.

* * *

[R]eview of legal issues under a *de novo* standard would require the courts of appeals to invest time and energy in the unproductive task of determining 'not what the law now is, but what the Government was substantially justified in believing it to have been.'

496 U.S. at 402–03, 110 S. Ct. at 2459–60, 110 L. Ed. 2d at ___.

The exact difference between the Ninth Circuit's three–tiered standard and the Supreme Court's unitary standard is difficult to discern. Both standards reject clearly erroneous findings of fact, wrong conclusions of law, and abuses in matters of discretion. Consequently, the Supreme Court's unitary standard has generated confusing applications. For example, in *Teamsters Local Union No. 760 v. UPS*, 921 F.2d 218 (9th Cir. 1990), the Ninth Circuit decided that

[w]e must first determine whether the district court abused its discretion by basing its Rule 11 determination on "an erroneous view of the law." *Cooter & Gell*, 110 S. Ct. at 2461. If the district court employed a proper view of the law, we must then determine whether it

abused its discretion in holding that the facts alleged in the union's complaint diverge so far from existing law that the union's claim amounts to a Rule 11 violation.

Unquestionably, the Supreme Court's unitary standard of review is intended to be more deferential to the lower court's decisions than the three–tiered standard. The question is whether such additional deference is advisable. Our answer is no.

It is true that the trial courts are better situated than the appellate courts to apply the fact–dependent standard mandated by Rule 11. But that is true of most, if not all, fact–dependent conclusions of law. That fact does not warrant abandoning the *de novo* right/ wrong standard of review applicable to conclusions of law.

All of the reasons given in *Cooter & Gell* for utilizing a deferential standard of review in Rule 11 cases can just as easily be used to justify a deferential standard of review in most other cases. The three–tiered standard of review works well in all other cases. It furthers the goals of articulating uniformly applicable principles and policies. In our view, Rule 11 cases are not exceptions. Therefore, we reject *Cooter & Gell*'s unitary standard of review and apply *Zaldivar's* three–tier standard.

## IV.

The third issue is whether the circuit court reversibly erred when it entered the April 17, 1991 order. Our answer is no.

In his February 18, 1992 Second Amended Opening Brief, Burton stated that "[t]he allegations of my Cross–claim against Horton were true and correct but the cause of action I will have later will be for malicious prosecution and not upon a representation obligation by Horton to me." Burton admitted that he "should have filed a different cause of action against Horton but [he] simply concluded [Horton's] specious statements about California law were so grossly wrong that [Horton] was guilty of malpractice.

[He] did not consider that [Horton] was not involved in counseling any party nor that [Horton] was not responsible [sic] attorney."

In other words, there is no dispute of fact or law. Burton admitted that he had no factual basis for a malpractice claim against Horton because Horton was not his lawyer and that his September 28, 1990 cross–claim against Horton violated HRCP Rule 11. Under those circumstances, HRCP Rule 11 mandated that the circuit court "shall impose . . . an appropriate sanction[.]" Upon a review of the record, we conclude that the sanction imposed was within the limits of the circuit court's discretion.

## CONCLUSION

Accordingly, we affirm the circuit court's April 17, 1991 "Order Granting Motion by Neil F. Horton, in His Capacity as Special Administrator of the Estate of Edith DeSilva, for Sanctions Against Blair F. Burton, Filed on February 8, 1991."

*Blair F. Burton*, defendant–appellant, *pro se*, on the brief.
*Felix A. Maciszewski*, on the brief for defendant–appellee Neil F. Horton.