**Electronically Filed
Supreme Court
SCWC-15-0000048
06-APR-2017
08:16 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

P.O.,
Respondent/Petitioner-Appellee,

vs.

J.S.,
Petitioner/Respondent-Appellant.

SCWC-15-0000048

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000048; FC-P NO. 08-1-0162)

APRIL 6, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case addresses the manner in which the family court determined monthly child support for the Child of Petitioner JS (Father) and Respondent PO (Mother). Following a series of written and oral agreements between Mother and Father regarding child support, Father sought court review and modification of his monthly support obligation. The family

court, citing in part Father's failure to show a material change in circumstances, denied the request and set Father's monthly payment at the same amount provided in the parties' prior oral agreement. Father appealed the child support ruling, which the ICA affirmed. On certiorari to this court, Father contends that he is entitled to review of his child support obligation irrespective of changed circumstances and that the family court erred in determining his monthly payment without utilizing the Hawai'i Child Support Guidelines.

We hold that, pursuant to Hawaii Revised Statutes § 576D-7(e) (2006), a responsible or custodial parent for which support has previously been ordered is entitled to a review of a child support order not more than once every three years without having to show a change in circumstances. We also hold that the family court is required by multiple provisions of the Hawaii Revised Statutes to use the Hawai'i Child Support Guidelines when it reviews the merits of a request for adjustment of a monthly support obligation. Thus, we vacate in part the rulings of the family court and the ICA and remand the case so that the family court may calculate Father's support payment in accordance with these statutory requirements.

## I.   BACKGROUND

Child was born to Mother and Father in October 2007. At the time Child was born, Father was employed as a professional football player.

On February 14, 2008, Mother filed a petition for paternity with the Family Court of the First Circuit (family court).  The petition included a Hawai'i Child Support Guidelines Worksheet (Guidelines Worksheet) that included Father's income, Mother's income, monthly child care expenses, and health and dental care expenses for Child.  The Guidelines Worksheet was prepared by Mother's attorney, signed by both Mother and Father, and stated that Father's payable child support obligation was calculated at $4,870 per month.

Following submission of the petition, Father and Mother, with the assistance of Mother's attorney, entered into a stipulated agreement regarding custody, visitation, and child support.[1]  On March 19, 2008, Father and Mother memorialized their agreement by filing a stipulation with the family court (2008 Stipulation).  In the 2008 Stipulation, the parties agreed that Father would pay Mother $4,870 per month in child support

---

[1]    Issues relating to custody and visitation are not raised on certiorari and will not be addressed further.

3

starting March 1, 2008.  The 2008 Stipulation did not include a Guidelines Worksheet.

On January 20, 2010, Mother filed with the family court a Motion and Declaration to Modify Child Support.  The motion included a Guidelines Worksheet that reflected the incomes of both Mother and Father.  The Guidelines Worksheet was signed by Mother and calculated Father's monthly child support obligation at $16,050.  Father's signature does not appear on the Guidelines Worksheet.

On July 21, 2010, Father and Mother amended their child support agreement by filing a stipulation to modify the 2008 Stipulation (2010 Stipulation).  In the 2010 Stipulation, Father agreed to pay Mother $8,500 per month in child support and deposit $2,500 per month into a savings account for Child, effective June 2010.  A Guidelines Worksheet was also not included with the 2010 Stipulation.

In October 2010, Father was released from employment as a professional football player.  By oral agreement in February 2011 (2011 Agreement), Mother and Father reduced Father's monthly child support obligation to $3,500 in light of Father's loss of employment.  No written agreement was filed with the family court memorializing the reduction in Father's child support payment.

In November 2012, Father married his current spouse. Father related that he depleted the savings accrued from his employment as a professional football player by the end of 2012. In explaining his depleted savings at trial, Father referred to an expenditure of $200,000 for his wedding and payment of various other debts and expenses.

According to Father, as his funds started to dwindle, he realized that he could not continue to pay the previously agreed-upon $3,500 per month. Father testified that as a result, he initiated contact with Mother to reduce child support and the parties orally agreed to lower support towards the end of 2012. Father could not recall whether this agreement lowered support to $2,000 or $1,500 per month. Mother testified that she did not agree to further reduce child support in 2012 and that Father unilaterally decided to decrease support to $1,500 per month without saying anything to her. In late 2012, Father began making monthly child support payments between $1,500 and $2,000. Towards the end of 2013, Father stopped paying child support.

Father testified that his spouse pays for all family living expenses because of his reduced savings. Father, who is a college graduate, indicated that he remains unemployed, citing a sports-related injury and a pending disability claim.

## II.   FAMILY COURT PROCEEDINGS

On August 19, 2013, Father filed a Motion for Relief after Judgment or Order and Declaration (Motion for Relief) requesting that the family court recalculate his child support obligation based on the parties' current incomes.  On September 18, 2013, Mother filed a motion to award her sole legal custody of Child, enforce the 2010 Stipulation, and for attorneys' fees.[2]

On October 7, 2013, pursuant to an agreement between the parties, the family court ordered that (1) all issues raised by Mother and Father would be tried together, (2) the parties were to engage in mediation, and (3) beginning in October 2013 and going forward, Father would pay child support in the amount of $3,500 per month pending resolution of the motions at mediation or trial (Pretrial Order).[3]

The family court held a six-day trial pertaining to the parties' motions that began on June 16, 2014, and concluded on September 16, 2014.  The court heard testimony on the matter of child support as stated above.[4]  On December 30, 2014, the family court entered an Order Re: Trial (Trial Order)

_____

[2]     The Honorable Jennifer L. Ching presided in the proceedings in this case.

[3]     There is no indication in the Pretrial Order that the Guidelines were used to calculate the $3,500 monthly support obligation.

[4]     The family court also received testimony relating to other issues not before this court.

determining Father's child support as $3,500 per month, effective February 1, 2011.

In its Findings of Fact and Conclusions of Law, the court found that on or about February 2011, the parties orally agreed to set child support at $3,500 per month. The court found that Father's testimony regarding an alleged agreement in 2012 to lower the amount to $2,000 or $1,500 per month lacked credibility.

The family court also found that Father was a college graduate and had not sought work following his 2010 employment termination. However, the court made no findings regarding Father's potential earning capacity, Father's assets, or any joint assets held with Father's spouse.

With regard to Father's request for modification of his monthly child support obligation, the family court found that Father "failed to meet his burden of proof" to show that the $3,500 support obligation that the parties agreed to should be modified. The court also found that there had been no "material change of circumstances" from the 2011 Agreement, which set child support at $3,500 per month.[5] Based on these

---

[5] The relevant findings of fact (FOFs) state as follows:

> 52. Father failed to meet his burden of proof to show that the $3,500 monthly child support agreed to should be modified, or the amount of any warranted modification.

(continued. . .)

findings, the court determined that Father owed Mother $64,490 in past due child support through January 2015.

In its conclusions of law, the family court quoted the requirement of Hawaii Revised Statutes (HRS) § 584-15(e) (2006) that the Hawai'i Child Support Guidelines (Guidelines) were to be utilized in determining the amount to be paid by a parent for support of a child. However, there is no indication in its findings of fact or conclusions of law that the family court applied the Guidelines in considering Father's support obligation. Rather, the court concluded that Father had not proved that the $3,500 per month amount agreed to by the parties in the 2011 Agreement and in the Pretrial Order should be modified and that it was "appropriate and fair" that support be set at that amount.[6]

_____

(. . .continued)

53. There has not been any material change of circumstances from the time when Father agreed to child support in the amount of $3,500 per month.

[6]     The relevant conclusions of law (COLs) state the following:

7. Father has not proven that the $3,500 per month child support that was agreed to by the parents (in approximately December of 2010); and agreed to and ordered in the [Pretrial Order], should be modified.

8. It is appropriate and fair that Father's monthly child support commencing February 1, 2011, and his current monthly child support, be $3,500.

The family court entered an Order Re: Child Support Arrears on January 21, 2015 (Arrears Order), providing for $64,490 in past due child support.

### III. ICA PROCEEDINGS

Father appealed the Trial Order and Arrears Order to the Intermediate Court of Appeals (ICA),[7] arguing that the family court erred when it denied his request for child support modification, set monthly child support in the amount of $3,500 effective February 1, 2011, and concluded that Father owed Mother $64,490 in child support arrears. Specifically, Father submitted that the family court had failed to calculate his monthly child support obligation using the Guidelines as required by the Hawaii Revised Statutes. Father also contended that he had made a sufficient showing to receive a reduction of his monthly child support payment.[8]

In its June 15, 2016 published opinion (Opinion), the ICA determined that the family court had not erred in rejecting

---

[7] At oral argument before this court, it was disclosed that Father stopped paying monthly child support pending appeal of this case. Oral Argument at 42:15-41, PO v. JS, SCWC-15-0000048 (2017), http://oaoa.hawaii.gov/jud/oa/17/SCOA_020217_SCWC_15_48.mp3. Testimony at trial suggests that Father's last support payment was made in late 2013. We observe that there was no stay entered by the family court authorizing cessation of child support payments.

[8] Additionally, Father argued that Mother should be barred from requesting past due child support under the principles of laches and/or equitable estoppel. The ICA rejected this argument, PO v. JS, 138 Hawai'i 109, 123, 377 P.3d 50, 64 (App. 2016), and because Father has not raised it on certiorari, it is not further addressed.

Father's request for child support modification. PO v. JS, 138 Hawaiʻi 109, 122, 377 P.3d 50, 63 (App. 2016). The ICA quoted Davis v. Davis, 3 Haw. App. 501, 506, 653 P.2d 1167, 1170 (1982), for the proposition that a party seeking to modify an existing child support obligation must show that there has been a "substantial and material change in the relevant circumstances so as to permit consideration of the modification request." PO v. JS, 138 Hawaiʻi at 122, 377 P.3d at 63. The ICA considered the most recently enforceable child support agreement by which to measure changed circumstances to be the 2011 Agreement to reduce Father's payment to $3,500 per month.[9] Id. The ICA agreed with the family court's determination that Father's wedding expenses and debt payments in 2012 did not constitute a material change in circumstances sufficient to warrant a modification of the child support amount set by the 2011 Agreement. Id.

The ICA then addressed Father's contention that the family court should have utilized the Guidelines in setting his monthly child support obligation. Id. at 122-23, 377 P.3d at 63-64. The ICA cited HRS § 571-52.5 (2006), which requires the

_____

[9] The ICA noted Father's testimony that the parties had agreed to further reduce child support in 2012, but stated that it would not reverse the family court's finding that Father's testimony on this issue was not credible because it was supported by substantial evidence in the record and not clearly erroneous. PO v. JS, 138 Hawaiʻi at 121, 377 P.3d at 62.

court to use the Guidelines when establishing or modifying a child support order "except when exceptional circumstances warrant departure." Id. The ICA concluded that the family court could have declined to use the Guidelines because it found that the existence of the 2011 Agreement to reduce child support was an "exceptional circumstance." Id. at 123, 377 P.3d at 64. Thus, the ICA could not "conclude that enforcing the February 2011 Agreement without reliance on the Guidelines was a manifest abuse of discretion." Id. The ICA also held that the family court did not abuse its discretion in setting Father's past due child support at $64,490. Id. at 123-24, 377 P.3d at 64-65.

Based on separate errors not raised on certiorari to this court,[10] the ICA vacated in part the family court's Trial Order and Arrears Order and remanded the case for proceedings consistent with its Opinion. Id. at 124, 377 P.3d at 65.

## IV. STANDARDS OF REVIEW

The family court's [findings of fact (FOFs)] are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible

---

[10] The ICA held that the family court erred when it (1) waived the psychologist-client privilege held by Child without determining whether waiving the privilege and allowing the psychologist to testify at trial was in the best interests of Child, and (2) concluded that Father had not demonstrated a material change in circumstances warranting a change of the parties' visitation schedule. PO v. JS, 138 Hawai'i at 118, 120, 377 P.3d at 59, 61.

> evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (quoting Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)).  A family court's conclusions of law are reviewed de novo.  Id.

## V.    DISCUSSION

On certiorari, Father argues that he has the right under Hawai'i law to a review of his child support obligation once every three years irrespective of changed circumstances and that the family court erred in applying a different standard. Father also contends that in considering his request for modification, the family court was required to calculate his support payment by utilizing the Guidelines.  Because the family court did not use the Guidelines, Father submits that the court erred in setting child support at $3,500 per month as of February 1, 2011.  Mother responds that the family court acted reasonably in declining to reduce Father's monthly child support payment.

## A.    Request for Review and Modification of Child Support Order

Father first contends that Hawai'i law entitles him to a review of his monthly child support obligation once every three years without having to show a change in circumstances.

Chapter 576D of the Hawaii Revised Statutes, entitled "Child Support Enforcement," establishes the Child Support Enforcement Agency (CSEA), the Guidelines, and other matters specific to child support orders.  HRS § 576D-7(e) provides the right to petition the family court for a review and modification of a child support order:

> The responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances.  The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

HRS § 576D-7(e) (2006) (emphases added).  Thus, the responsible or custodial party is entitled to a review and reassessment of a child support order once every three years "without having to show a change in circumstances."  Id.; see also HRS § 576E-14(d) (2006) (same in administrative child support proceedings); HRS § 580-47(e) (2006) (same following divorce proceedings).  An individual who seeks review of a child support order more than once "in any three-year period" may do so provided the request is supported by proof of a substantial or material change in circumstances.[11]  HRS § 576D-7(e).

---

[11]    Unlike in Waldecker v. O'Scanlon, where this court held that a petitioner need not demonstrate a material change in circumstances to obtain

(continued. . .)

The right to review of a child support order not more than once every three years was included in Hawaii's child support enforcement framework by legislative enactment in 1997. See 1997 Haw. Sess. Laws Act 293, § 28 at 664-65.  This right was codified at HRS § 576D-7(e) with respect to judicial child support enforcement, HRS § 576E-14(d) regarding administrative child support enforcement, and HRS § 580-47(e) as it relates to child support orders and divorce proceedings.  See supra.  Thus, as a result of these 1997 amendments, an individual is entitled to receive review of an existing child support order without showing changed circumstances "not more than once every three years."  HRS § 576D-7(e); HRS § 576E-14(d); HRS § 580-47(e).

In this case, the family court found that there had been no "material change of circumstances" from the parties' oral 2011 Agreement to set support at $3,500 per month to the August 19, 2013 filing of Father's Motion for Relief, and, as a result, it concluded that modification was not appropriate. Likewise, the ICA in its Opinion in this case relied on Davis v.

---

(. . .continued)

modification of a child custody order, the child support modification statutes require a showing of a substantial or material change in circumstances when review is sought more than once in any three-year period and explicitly reject such a requirement when review is sought not more than once every three years.  137 Hawai'i 460, 467-70, 375 P.3d 239, 246-49 (2016) (explaining that child custody statute did not expressly require party seeking review and modification of custody order to demonstrate material change in circumstances and that requirement to do so as developed by caselaw was inconsistent with statute).

14

Davis, 3 Haw. App. 501, 506, 653 P.2d 1167, 1170 (1982), and determined that Father was required to show a substantial change in circumstances from the 2011 Agreement to receive review of his request for reduction in child support.  PO v. JS, 138 Hawai'i 109, 122, 377 P.3d 50, 63 (App. 2016).  Neither the family court nor the ICA cited or otherwise acknowledged the impact of HRS § 576D-7(e) on Father's right to review of his monthly support payment.

There are two possible rationales for the rulings of the family court and the ICA.  First, the family court, like the ICA, may have relied on the ICA's 1982 decision in Davis, which held that a request for modification of a child support order must be based on "a substantial and material change in the relevant circumstances which were before the court when it made the original order."[12]  3 Haw. App. at 505-06, 653 P.2d at 1170 (citing HRS § 580-47(c) (1976, as amended)).  However, any reliance on Davis in this case would be misplaced.  Davis was decided by the ICA 15 years before the 1997 legislative enactment that amended the standard for child support modification requests, see supra, and there is no indication

---

[12]     The family court did not affirmatively cite to Davis, but it concluded in its findings of fact that there had "not been any material change of circumstances from the time when Father agreed to child support in the amount of $3,500 per month."

from the ICA's Opinion that the impact of these amendments was recognized.[13]  To the extent that the family court and the ICA may have relied exclusively on Davis to reject Father's request for child support modification and failed to consider the effect of the enactment of HRS § 576D-7(e) on this case, each held Father to an incorrect standard with respect to review of requests for child support modification.

Alternatively, the family court and the ICA may have considered that the oral 2011 Agreement to reduce monthly support to $3,500 constituted the parties' most recent "child support order" and determined that Father's August 19, 2013 Motion for Relief required him to show "a substantial or material change of circumstances" because the motion was a

---

[13]  It is noted that in Jaylo v. Jaylo, the ICA acknowledged the right of a custodial or responsible parent to seek review of a child support order once every three years without having to show a change in circumstances.  124 Hawai'i 488, 498–99, 248 P.3d 1219, 1229–30 (App. 2011), vacated on other grounds, 125 Hawai'i 369, 262 P.3d 245.  However, in several other decisions following the 1997 enactment of HRS §§ 576D-7(e), 576E-14(d), and 580-47(e), the ICA has cited to Davis for the proposition that "[a] petition to modify an order for child support cannot be based on the same set of facts that were before the court when the original order was made" and that "[t]here must have been substantial and material change in relevant circumstances which were before the court when it made the original order." Rao v. Rao, 121 Hawai'i 541, 221 P.3d 519 (App. 2009) (mem.); see also Hoernig v. Hoernig, 129 Hawai'i 427, 301 P.3d 1268 (App. 2013) (SDO); Jackson v. Jackson, 137 Hawai'i 206, 366 P.3d 1085 (App. 2016) (SDO).  It is noted that in none of these cases does the record indicate that a request to modify child support had been made within the three years preceding the request at issue on review, which would have otherwise affected an analysis under HRS § 576D-7(e).  To the extent that these cases imply that a party cannot rely on HRS §§ 576D-7(e), 576E-14(d), and 580-47(e) to request review of a support order not more than once every three years absent a showing of changed circumstances, they are incorrect.

"subsequent request" for adjustment of support within "any three-year period." HRS § 576D-7(e).[14] However, as noted, no reference was made to HRS § 576D-7(e) or its substantive principles in the family court's rulings or in the ICA's Opinion.

In any event, Father and Mother's oral 2011 Agreement to modify Father's child support obligation is not relevant to an analysis of the right to review of a "child support order" under HRS § 576D-7(e). The 2011 Agreement was not memorialized in writing and filed with the family court. As such, it does not constitute a "child support order" within the meaning of HRS § 576D-7(e). See HRS § 576D-1 (2006) (defining "order of support" as "a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child"); HRS § 576E-1 (2006) (defining "support order" for purposes of administrative child support proceedings as "an obligation determined by a court or duly authorized administrative agency, for the maintenance of a dependent child"); HRS § 576B-102 (2006) (defining "child

_____

[14] Because the July 21, 2010 Stipulation filed with the family court, rather than the oral 2011 Agreement, is the relevant "child support order" for purposes of HRS § 576D-7(e), we do not address whether a party who files an initial request for review and adjustment of a "child support order" within the three-year period immediately following entry of that order must show a "substantial or material change of circumstances" pursuant to the statute. See HRS § 576D-7(e).

17

support order" for purposes of Uniform Interstate Family Support Act as a "support order" for a child, and, in turn, defining "support order" as a "judgment, decree, order, decision, or directive, whether temporary, final, or subject to modification, issued in a state or foreign country for the benefit of a child"). Accordingly, the 2010 Stipulation filed with and approved by the family court constituted the relevant "child support order" for purposes of HRS § 576D-7(e), and the family court and the ICA erred to the extent that they may have determined otherwise.

As recounted, Father and Mother's 2010 Stipulation modifying their respective support, visitation, and custody rights and obligations was filed with the family court on July 21, 2010. The record does not indicate that Father ever submitted to the family court a request for review of his child support obligation before he filed his August 19, 2013 Motion for Relief. Thus, pursuant to HRS § 576D-7(e), because the August 19, 2013 Motion for Relief sought review and adjustment of a "child support order," which in this case was entered on July 21, 2010, Father was entitled to a review and reassessment of his monthly support payment without having to show a change in circumstances. As a result, the family court erred to the extent that it conditioned review of Father's support obligation on his ability to show a material change in circumstances, and

18

the ICA erred when it affirmed this ruling of the family court.
PO v. JS, 138 Hawai'i at 122, 124, 377 P.3d at 63, 65.

### B.    Use of Child Support Guidelines

Father also contends the family court erred when it failed to use the Guidelines in determining his monthly child support obligation.

The Hawai'i Child Support Guidelines are promulgated by the Family Courts of Hawai'i and are used by the family courts to determine monthly child support.  See HRS § 576D-7(a) (2006). The Guidelines contain substantive rules and principles relating to calculation of support and include various appendices; Appendix A includes the "Child Support Guidelines Worksheet" (Guidelines Worksheet), which is used to determine the initial calculation of a parent's monthly support obligation.  Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines app. A, http://www.courts.state.hi.us/docs/form/maui/2CE248.pdf (last visited Mar. 16, 2017).

There are several sources of authority that set forth a family court's obligation to calculate monthly child support using the Guidelines.  HRS chapter 571, entitled "Family Courts," governs the family courts in general.  HRS § 571-52.5 provides in relevant part as follows:

> When the court establishes or modifies the amount of child support required to be paid by a parent, the court shall

<u>use the guidelines</u> established under section 576D-7, except when exceptional circumstances warrant departure.

HRS § 571-52.5 (2006) (emphasis added). Therefore, the family courts are required to use the Guidelines when establishing or modifying child support unless exceptional circumstances warrant departure. <u>Id.</u>

Relatedly, HRS chapter 576D provides that "[t]he family court . . . shall establish guidelines to establish the amount of child support when an order for support is sought or being modified." HRS § 576D-7(a). Additionally, HRS § 576D-7(b)(5) provides that "[t]he guidelines <u>shall be</u> . . . considered by the [family court] judges in the establishment of <u>each</u> child support order."[15] HRS § 576D-7(b)(5) (emphases added).

Use of the Guidelines is also required by HRS chapter 584, the "Uniform Parentage Act." Chapter 584 "is concerned specifically and exclusively with actions to establish the paternity of a child and to obtain child support, reimbursement

_____

[15] HRS chapter 576D was enacted in 1986 to bring the State of Hawai'i into compliance with recently enacted federal law that required the states to (1) establish child support guidelines, and (2) make the guidelines available to all judges who have the power to determine child support, though the guidelines "need not be binding upon such judges." <u>See</u> Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305 (1984) (codified as amended at 42 U.S.C. § 667). However, in enacting chapter 576D, the Hawai'i legislature departed from its federal counterpart and made the use of the Guidelines by family court judges mandatory rather than discretionary. <u>See</u> 1986 Haw. Sess. Laws Act 332, § 2 at 698 ("The guidelines shall be . . . [a]pplied statewide.").

and other relief."  Child Support Enf't Agency v. Doe, 98 Hawai'i 58, 63, 41 P.3d 720, 725 (App. 2001) (comparing HRS chapters 571 and 584).  HRS § 584-15(e) provides in relevant part:

> In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall use the guidelines established under section 576D-7.

HRS § 584-15(e) (2006) (emphases added).

Thus, the statutory framework relating to child support mandates that the family courts utilize the Guidelines in setting and modifying child support orders.  Indeed, in its COL 6, the family court acknowledged that HRS § 584-15(e) required it to administer the Guidelines whenever it "determin[es] the amount to be paid by a parent for support of [a] child."  However, there is no indication that the family court utilized the Guidelines in determining Father's monthly support obligation in the Trial Order.  The family court also made no mention of the Guidelines in its Findings of Fact and Conclusions of Law, except to reference testimony that the Guidelines were not used in setting the support amount in the 2010 Stipulation.  The Pretrial Order setting Father's support obligation at $3,500 per month pending resolution of the case at trial also makes no reference to the Guidelines.  Further, the family court made no findings with respect to key factors utilized by the Guidelines to calculate child support.  For

example, the court did not make findings regarding Mother's income, Father's earning capacity,[16] or the needs of Child. In fact, rather than using the Guidelines or its underlying factors, the family court in COL 7 appears to have justified its child support determination of $3,500 per month based on the parties' 2011 Agreement and Father's agreement to pay that sum pending resolution at mediation or trial.[17]

Father's Motion for Relief in this case specifically requested that the family court conduct a recalculation of child support based on the parties' current incomes. The family court did not apply the Guidelines, and its failure to do so deprived Father of a calculation of his monthly support obligation using the "wisdom of . . . the Guidelines." Mack v. Mack, 7 Haw. App. 171, 172, 749 P.2d 478, 479 (1988) (determining that family court's decision not to administer Guidelines in setting support amount because the children were partially self-sufficient

---

[16]    We note that in determining gross income for calculation of child support, the Guidelines permit the family court to use "imputed income" when "a parent is not employed full-time or is employed below full earning capacity." Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines 23. When the parent is unemployed or underemployed for reasons other than caring for the child, the parent's income may be determined and imputed by the family court according to the parent's "income capacity in the local job market" and "considering both the reasonable needs of the child(ren) and the reasonable work aspirations of the parent." Id.

[17]    In COL 7, the family court determined that "Father has not proven that the $3,500 per month child support that was agreed to by the parents (in approximately December of 2010); and agreed to and ordered in the [Pretrial Order], should be modified."

adults was wrong).  Additionally, the failure of the family court to apply the Guidelines rendered the child support award in essence unreviewable, as there is no meaningful way to evaluate how the amount was determined or whether it was correctly calculated.  See Gordon v. Gordon, 135 Hawai'i 340, 350-51, 350 P.3d 1008, 1018-19 (2015) (family court's failure to make adequate findings on the record did not permit meaningful appellate review of family court's division of marital estate).  Thus, the family court erred when it determined Father's monthly support obligation without using the Guidelines as required by statute.

## C.     Exceptional Circumstances

As stated, the family court must utilize the Guidelines in establishing or modifying child support "except when exceptional circumstances warrant departure."  HRS § 571-52.5; see also Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines 11, http://www.courts.state.hi.us/docs/form/maui/2CE248.pdf (last visited Mar. 16, 2017) (detailing that the family court may deviate from the support amount calculated using the Guidelines Worksheet upon a showing of "exceptional circumstances").  Courts of this jurisdiction have found "exceptional circumstances" to encompass a broad variety of

factual scenarios.[18]  The Guidelines also give examples of when

"exceptional circumstances" may or may not exist and grant broad

discretion to the family court to find the existence of "other

exceptional circumstances" beyond those enumerated.  Haw. State

Judiciary, 2010 Hawai'i Child Support Guidelines 11-13 (for

example, identifying as enumerated "exceptional circumstances"

the extraordinary needs of the child or other parent, other

payments made on behalf of the child or other parent, and a

parent's inability to earn income).

Pursuant to HRS § 571-52.5 and the Guidelines, the

existence of exceptional circumstances may allow for deviation

from the support amount calculated using the Guidelines

Worksheet.[19]  However, exceptional circumstances do not excuse a

---

[18]    See, e.g., Child Support Enf't Agency v. Doe, 104 Hawai'i 449, 457-58, 91 P.3d 1092, 1100-01 (App. 2004) (support of additional legal children may constitute an exceptional circumstance); Child Support Enf't Agency v. Doe, 98 Hawai'i 58, 65, 41 P.3d 720, 727 (App. 2001) (monthly income that would result in a "computation higher than the reasonable needs of the children based on the relevant standard of living" may constitute an exceptional circumstance (quoting Nabarrete v. Nabarrete, 86 Hawai'i 368, 371, 949 P.2d 208, 211 (App. 1997))); Nabarrete, 86 Hawai'i at 371, 949 P.2d at 211 (adult child's own income may reduce his or her "reasonable needs" and may therefore constitute an exceptional circumstance); Child Support Enf't Agency v. Mazzone, 88 Hawai'i 456, 462, 967 P.2d 653, 659 (App. 1998) ("leav[ing] open" the question of whether a difference in cost of living between Hawai'i and child's present state of residence constituted an exceptional circumstance); Jaylo v. Jaylo, 124 Hawai'i 488, 498-99, 248 P.3d 1219, 1229-30 (App. 2011) (physical disability may constitute an exceptional circumstance), vacated on other grounds, 125 Hawai'i 369, 262 P.3d 245; Doe v. Roe, 85 Hawai'i 151, 162, 938 P.2d 1170, 1181 (App. 1997) (private education expenses may, in certain circumstances, constitute exceptional circumstances).

[19]    In its Opinion, the ICA noted a possible inconsistency in the child support statutory framework because HRS § 571-52.5 grants explicit

(continued. . .)

failure to use the Guidelines Worksheet.  The language of HRS §
571-52.5 states that exceptional circumstances may "warrant
departure," which presumes that the Guidelines Worksheet was
utilized in the first place.  HRS § 571-52.5; see also Matsunaga
v. Matsunaga, 99 Hawai'i 157, 167, 53 P.3d 296, 306 (App. 2002)
(noting that "[p]resumptively, the amount of child support
necessary . . . is the total amount computed according to [the
Guidelines]" and considering whether exceptional circumstances
warranted deviation); Child Support Enf't Agency v. Mazzone, 88
Hawai'i 456, 462, 967 P.2d 653, 659 (App. 1998) (in cases of
alleged "exceptional circumstances," "[t]he amount calculated
pursuant to [the Guidelines] is presumptively the amount that
should be ordered and the party seeking a deviation from it has

---

(. . .continued)

permission to deviate from the Guidelines based on "exceptional
circumstances," while HRS §§ 584-15(e) and 576D-7(b)(5) do not.  PO v. JS,
138 Hawai'i at 122-23, 377 P.3d at 63-64.  Although departure from the
Guidelines based on "exceptional circumstances" is not expressly provided for
by HRS §§ 584-15(e) and 576D-7, the Guidelines in effect at the time this
case was decided contain an optional "Exceptional Circumstances Form," which
allows parties to request a deviation from the support amount tabulated on
the Guidelines Worksheet.  See Haw. State Judiciary, 2010 Hawai'i Child
Support Guidelines app. C.  An optional "exceptional circumstances" section
appears to have been included within the Guidelines since at least 1989.
See, e.g., Richardson v. Richardson, 8 Haw. App. 446, 447, 808 P.2d 1279,
1280 (1991) (describing 1988 and 1989 Guidelines).  Thus, the only
"inconsistency" between these statutes pertains to the source of the
authority for deviating from the support amount calculated using the
Guidelines Worksheet upon a showing of "exceptional circumstances."  Under
HRS § 571-52.5, the ability to deviate from this amount is authorized by the
statute itself; under HRS §§ 584-15(e) and 576D-7, in contrast, the authority
for such deviation comes from the Guidelines whose promulgation and usage the
child support statutes require.

the burden of proof").  The Guidelines likewise permit

"deviation" based on exceptional circumstances, and the

Guidelines' requirement that the family court make factual

findings on the "amount of support that would have been required

as calculated using [the Guidelines Worksheet]" further

demonstrates that even in cases of exceptional circumstances,

the court must first calculate a support amount utilizing the

Guidelines Worksheet.  Haw. State Judiciary, 2010 Hawai'i Child

Support Guidelines 11 (also noting that in cases of exceptional

circumstances, the parent seeking deviation has the burden of

proving that the circumstances "warrant a departure from the

child support as calculated by the [Guidelines Worksheet]").

Therefore, even when "exceptional circumstances" exist within

the meaning of HRS § 571-52.5 and the Guidelines, the family

court is initially required to use the Guidelines Worksheet to

determine the amount of the child support obligation.

In its Opinion, the ICA theorized that the existence

of "exceptional circumstances," such as the parties' 2011

Agreement, excused the family court from administering the

Guidelines pursuant to HRS § 571-52.5.  PO v. JS, 138 Hawai'i at

123, 377 P.3d at 64.  However, as stated, the family court was

first required to utilize the Guidelines Worksheet and compute a

support amount.  Only after determining the support amount using

the Guidelines Worksheet may the court consider whether

exceptional circumstances permit deviation from that amount. If the court concludes that such circumstances exist, it must then make findings of fact with respect to both the support amount determined by the Guidelines Worksheet and the exceptional circumstance(s) that would justify deviation from this amount. See Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines 11 (required findings of fact in cases of exceptional circumstances must include "the amount of support that would have been required as calculated using [the Guidelines Worksheet]" and "findings . . . regarding the exceptional circumstances"). In this case, the family court did not utilize the Guidelines Worksheet to calculate a support amount, nor did it include oral or written findings identifying any exceptional circumstances. Therefore, the ICA erred in concluding that the existence of "exceptional circumstances" permitted the family court to forgo use of the Guidelines. PO v. JS, 138 Hawai'i at 123, 377 P.3d at 64.

### D. Child Support Arrears

In addition to contending that the family court erred because it failed to use the Guidelines, Father argues that the ICA also erred when it upheld the family court's ruling setting support at $3,500 per month as of February 1, 2011.

Mother and Father each testified at trial that they agreed to a reduction in child support in February 2011, and

Father has not contested the validity of the 2011 Agreement on appeal. The family court found in its Findings of Fact and Conclusions of Law that the parties agreed to reduce child support to $3,500 in February 2011, and this finding is supported by substantial evidence and not clearly erroneous. Further, appellate courts are required to "give full play to the right of the fact finder to determine credibility," State v. Valdivia, 95 Hawai'i 465, 471, 24 P.3d 661, 667 (2001) (quoting State v. Jenkins, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000)), and the family court's finding that Father's testimony regarding a reduction of support in late 2012 was not credible is supported by substantial evidence and not clearly erroneous. Father also agreed in the Pretrial Order to pay $3,500 per month in child support pending resolution of the parties' motions at mediation or trial. We therefore affirm the family court's Arrears Order calculating Father's past due child support as $64,490 through and including January 2015.

## VI.    CONCLUSION

For the reasons discussed, the family court erred in failing to use the Guidelines to calculate Father's child support obligation and by requiring Father to show a material change in circumstances to obtain modification of his monthly payment. Likewise, the ICA erred in affirming these rulings.

28

On remand, the family court is required to utilize the Guidelines in evaluating Father's request to modify his monthly support obligation.  See HRS § 576D-7(b)(5); HRS § 584-15(e); HRS § 571-52.5.  After calculating the amount of monthly support using the Guidelines Worksheet, the family court may deviate from this amount if it finds the existence of exceptional circumstances within the meaning of the Guidelines and applicable law.  In accordance with the Guidelines, such a deviation would require the family court to make written or oral findings of fact regarding the support amount from the Guidelines Worksheet and the applicable exceptional circumstances.  See HRS § 571-52.5; see also Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines 11.[20]

Therefore, the family court's Trial Order, which was vacated in part by the ICA on other grounds, is also vacated with respect to its determination of Father's monthly child support obligation.  The family court's Arrears Order, which was

---

[20]    The Guidelines further permit the family court to require a parent to "convert [to cash] all or some portion of" the parent's assets for payment of support when the parent has inadequate income to meet a child support obligation.  Haw. State Judiciary, 2010 Hawai'i Child Support Guidelines 21; see also Child Support Enf't Agency v. Roe, 96 Hawai'i 1, 6, 25 P.3d 60, 65 (2001) (noting that "the value of Father's properties may have been relevant" in calculating support based on provision of 1994 Hawai'i Child Support Guidelines stating that when "a parent has inadequate income to meet his/her support obligation but owns assets, he/she may be required to convert all or some portion of said assets to cash for payment of support" (internal quotations omitted)).  We note that on remand this provision may be relevant.

vacated in part by the ICA on other grounds, is affirmed as to its determination that Father owes Mother $64,490 in past due child support through and including January 2015.  The ICA's July 13, 2016 Judgment on Appeal is (1) vacated as to its affirmance of the family court's child support determination in the Trial Order and (2) affirmed as to the family court's Arrears Order.  Accordingly, this case is remanded to the family court for further proceedings consistent with this opinion.

Steven L. Hartley,
Elsa F. M. McGehee, and
Elena L. Bryant
for petitioner

Steven J. Kim,
Courtney N. Naso, and
Candra S. Rivers
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

