**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000647**
**15-JUN-2021**
**07:53 AM**
**Dkt. 59 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

CH, Appellant-Appellee, v.
CHILD SUPPORT ENFORCEMENT AGENCY,
STATE OF HAWAIʻI, Appellee-Appellee,
and SH, Appellee-Appellant

NO. CAAP-19-0000647

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-AP NO. 18-1-0003)

JUNE 15, 2021

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY LEONARD, J.

This child support case concerns an administrative agency decision to impute income to a father who was terminated from his job and unable to secure comparable work. Income was imputed to him commensurate with his earnings at a prior job, which he had left in an attempt to advance his career. After he

was abruptly fired, the father immediately sought similar positions, but was only able to get hired at a lower-paying job.

We hold that pursuant to, *inter alia*, the 2014 Hawaiʻi Child Support Guidelines (**Guidelines**): (1) either a responsible parent or a custodial parent may request a modification of child support less than three years after the prior support order, but the requesting parent must show proof of a substantial or material change in circumstances; (2) a material change of circumstances will be <u>presumed</u> if child support as calculated pursuant to the Guidelines is either ten percent greater or less than the support provided for in the outstanding order; (3) when a parent's change of income is the reason a request for modification of child support is made, that request should in the first instance be considered to be a request in the regular course, pursuant to Section IV of the Guidelines, and not as an exceptional circumstance; (4) the discretionary utilization of imputed income to calculate child support is the exception, not the rule, in the determination of child support under the Guidelines; (5) the standard method for determining child support, which involves completing a worksheet using the parents' actual monthly gross income must be the starting point in every case, including in cases involving a request to impute income at a higher amount; (6) the family court or administrative agency *may* consider what a parent is capable of earning if the parent attempts in good faith to secure proper employment, *i.e.*, the

parent's full earning capacity; (7) in this case, the administrative hearing officer's findings were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and were affected by an erroneous view of the law with respect to imputed income; and (8) in the absence of proper consideration of the factors required in the Guidelines, the administrative hearing officer's imputation of income was arbitrary and capricious, and a clearly unwarranted exercise of discretion affecting the father's substantial rights. We further hold that, prospectively, a decision to impute income to a parent based on employment below full earning capacity must be accompanied by findings of fact concerning: (1) the determination that a parent is employed below full earning capacity; (2) the reasons for the limited employment; and (3) the factors utilized in the determination of the amount of the imputed income. We affirm the judgment vacating the administrative order in this case.

Appellee-Appellant-Custodial-Parent SH (**Mother**) appeals from the August 19, 2019 Notice and Judgment on Appeal (**Judgment**), which was entered in favor of Appellant-Appellee-Responsible-Parent CH (**Father**) and against Mother and the State of Hawai'i Child Support Enforcement Agency (**CSEA**), in the Family Court of the First Circuit (**Family Court**).[1] Mother also

---

[1] The Honorable Christine E. Kuriyama presided.

challenges the Family Court's August 19, 2019 Decision and Order Vacating Administrative Findings and Order Filed November 5, 2018 and Remand (**Decision and Order**).

I.    BACKGROUND

On March 29, 2016, the Family Court entered a Divorce Decree (**Decree**) ending Mother and Father's marriage.[2]  The Decree ordered, *inter alia*, Father to pay Mother monthly child support of $720.50 per child, for a total support payment of $1,441 per month, for the parties' two minor children (**Children**) "[p]ursuant to the Child Support Guidelines Worksheet" (**CSG Worksheet**).  The CSG Worksheet supporting the child support ordered in the Decree was based on Father's (then) monthly gross income of $6,318 as a police officer with the Honolulu Police Department (**HPD**).

On or about March 26, 2018, Father accepted a position as a Lateral Police Officer for the City of Federal Way, Washington, with a start date of July 1, 2018.  Father left his job with HPD and relocated to Washington State.  His gross monthly income with the Federal Way Police Department (**FWPD**) was $7,146.  However, on August 13, 2018, Father was terminated from FWPD, effective immediately, because he failed to pass the department's service pistol skills test, even after multiple attempts.

_____

[2]    The Honorable Karen M. Radius presided.

Almost immediately thereafter, on August 14, 2018, he made an inquiry to CSEA, and then submitted an Application for Services form, which requested modification of child support due to his change in financial circumstances due to being unemployed. He submitted further forms provided by CSEA and returned them on or about August 20, 2018.

On or about August 28, 2018, CSEA sent Father, *inter alia*, a Proposed Order entitled Administrative Findings and Order (**Proposed Order**). The Proposed Order *increased* Father's monthly child support payments to $882.50 per child, for a total support payment of $1,765 per month – an increase of over 22% – rather than decreased Father's support obligation, apparently based on a Child Support Guidelines Worksheet (**Proposed Worksheet**) showing Father's Gross Monthly Income as $7,802.[3]

On or about September 4, 2018, Father submitted a Request for Hearing before the State of Hawaiʻi Office of Child Support Hearings (**OCSH**), stating that he objected to the Proposed Order. Father stated that due to his recent unemployment, he objected to the increased child support.

---

[3] The record on appeal does not include a complete copy of the August 28, 2018 transmittal to Father. Nor does it include any document or other record relied upon to support the increased child support reflected in the Proposed Order. The Proposed Worksheet is unsigned and does not expressly indicate who prepared it; however, it appears likely that the Proposed Worksheet was prepared by CSEA. The only possible alternative is that it was prepared by Mother. The record also does not include any document or other evidence of Mother's apparent opposition to Father's request and Mother's apparent request that Father's child support payments be increased.

On October 25, 2018, a hearing was held before OCSH Hearings Officer Michael G. Wong (**Hearing Officer**). Father appeared pro se and by telephone, Mother appeared in person represented by counsel, and Catherine Navor, CSEA legal assistant (**Navor**), participated. The parties were not sworn in as witnesses. The Hearing Officer began the hearing by asking Navor to summarize pre-hearing discussions with the parties and go over any exhibits she might have. Navor presented two exhibits: (1) Father's application for modification; and (2) the Divorce Decree. Navor stated that the Children were on QUEST, but as of November 1, 2018, Mother would be adding them to her medical and dental plan, which would cost her approximately $34 a month, for which she would receive a credit on child support calculations. Navor noted that Mother provided exhibits showing her income and that there was no dispute concerning Mother's income. Mother also had provided an exhibit concerning child-care costs, for which she would receive a credit, and Father did not dispute that.

Navor described Father's income as the disputed issue. She said that "per the Department of Labor," Father averaged about $7,463 per month during the first six months of the year, when he was employed with HPD. There is no evidence in the record supporting that statement, but Father did not contest it. Navor also stated that Father left that employment and moved to another state for employment, which did not work out. She

informed the Hearing Officer that Father was currently working full-time, but only making $2,817 per month. Navor said that she did four calculations, but CSG Worksheets for those calculations do not appear in the record.

The Hearing Officer next addressed Father, telling him that as the person who applied for services with CSEA, Father bears the burden of proof and the burden of persuasion. The Hearing Officer then proceeded to question Father. He first asked if Navor's summary was, in Father's opinion, accurate. Father responded, "Yes." The Hearing Officer acknowledged receiving a fax from Father and other documents, which the Hearing Officer announced he was going to treat as a "cover letter." The Hearing Officer then said that he would mark the document as RP-1, but that he was "not going to necessarily treat it as a piece of evidence," but would make it part of the record. The Hearing Officer asked Mother's attorney (but not Father) if he had any objection to that.

The Hearing Officer then noted receipt of the March 26, 2018 letter of acceptance for the FWPD job, the August 13, 2018 letter terminating Father, a letter from CSEA purportedly including a copy of Father's income statement,[4] and what the Hearing Officer described as a bunch of emails. Father interjected, "Applications." The Hearing Officer said, "I assume

_____

[4] The document identified in the record on appeal as the income statement is not readable.

7

these are your attempts to try and find new employment?" The Hearing Officer stated he was going to mark the documents as RP-2 (accepted offer of employment with FWPD), RP-3 (letter immediately terminating Father's employment with FWPD), RP-4 (transmittal letter and form completed by Father requesting modification of child support due to termination of employment), and RP-5 (printout of emails to and from Father concerning post-termination employment applications). The Hearing Officer then asked Mother's attorney, "[Y]ou want to put any objections on the record? Honestly, they're all over your objection." Mother only objected to RP-1 (Father's letter/statement to CSEA Hearing Officer requesting modification of child support due to change in financial/employment circumstances) and RP-5.

The Hearing Officer then turned to Mother's exhibits, which consisted of Mother's pay statements. Father made no objection. Mother's attorney noted that Mother's income was stipulated to by the parties.

The Hearing Officer asked Mother's counsel if he had any questions or comments concerning what Navor said. Counsel replied that he had brief argument as to Father's income. The Hearing Officer stated that his understanding was that Mother is requesting that $7,463 be used as Father's monthly gross income and Mother objected to Father's request to use $2,817. Mother's counsel agreed.

The Hearing Officer then questioned Father again, saying he wanted to hear the amount Father was requesting, and the circumstances that led Father to leave his job with HPD. Father stated that he left "in pursuit, sir, of something more." Father explained that he sought to advance his career in Washington State, recognizing that if he made more money he would be obligated to pay more, but then he was unable to pass one of the post-hiring requirements. Father stated that, "It was not intended to lose on a job."

The Hearing Officer continued, asking Father to confirm that he did not just quit his job and move to the mainland, but instead had something lined up. The Hearing Officer asked whether the fact that Father could not pass the "gun or pistol proficiency" was the only reason he got terminated. Father said that was correct and explained that the standards for the FWPD were more advanced than what he was used to qualifying for back in Hawaiʻi. The Hearing Officer said, "I don't want to poke at an owie, but how long were you at HPD?" Father responded that it was nearly 11 years. The Hearing Officer requested that Father "help [him] through" the part of the gun test that Father had difficulty with. Father explained that it was distance shooting and it was a little further than what he was used to.

The Hearing Officer questioned Father on his efforts to get new jobs or employment in law enforcement. Father testified that he applied to the Seattle Police Department and passed an

"oral board consideration for hire," but that the position would not be available until the next year. He applied to other departments, as well, and went through all of the interviews. Father stated that for one of them, with the Auburn Police Department, he did not pass the oral board and was declined for further consideration. The documents Father submitted also showed applications to police departments in the cities of Kent, Fife, and Des Moines, Washington, as well as applications for public and private sector security guard positions. In response to further examination by the Hearing Officer, Father testified that his current job was with Emerald Queen Casino Hotels, and that it was a security position. Father described it as being in the scope of law enforcement, but a downward position from police work with substantially lower income. Father stated that he was embarrassed, but that he needed to get a job, so he could "just try to get back to provide something at least."

Mother's counsel was then allowed to question Father, and elicited testimony that Father had been informed that there would be a probationary period and that he would have to pass a shooting test. Counsel also asked whether Mother was "part of the decision" for Father to move. Father responded that he had apprised her of his plans, but it was solely his decision, which he needed to make to better himself.

The Hearing Officer then asked Father to confirm that he was not disputing Mother's income (he was not) and then let

Mother's counsel make argument. Mother's argument was principally that Father had made unilateral and voluntary decisions that Mother had no part of and that his obligations should be maintained in order for the children to be properly supported.

Father was given an opportunity to respond to the argument and stated that he had always been a responsible dad, he informed Mother of his plan while he was still in Hawaiʻi, including that he would be able to provide medical benefits from the FWPD job. He really tried to pass the test and move forward with the new job and that his decrease in pay is "kind of like kicking me in the gut," but that was what he had to do for the time being. Father represented that he was still trying to pursue a career in law enforcement that pays well and he thought it would be a "temporary lowering pay moment."

The Hearing Officer then ruled:

> Parents which is [sic] requesting exceptional circumstances have the burden of providing proof of the exceptional circumstance, and those are determined on a case-by-case basis. . . .
>
> . . . .
>
> When a parent is not employed full-time or below their earning capacity, I need to look at -- according to Hawaii law and the Hawaii child support guidelines, I need to look at the reasons for why they're under employed or unemployed. In your case, your unemployment is not due to a disabled [sic] or an injury. It's due to choices you made and things didn't go well for you.
>
> . . . .

> And so when a parent is earning below their earning capacity, according to the Hawaii child support guidelines and Hawaii law, income for you can be imputed. What that means is I would say even though you're not making this amount, for purposes of calculating child support, you should be making this amount, and in this case I looked at mother's pay statements, I looked at the divorce decree. Between the time of divorce and now, her income has increased 20 percent. If I look at your pay when you got divorced and I added 20 percent, that would be more than what the Department of Labor reported you made in the earlier part of this year. It would be $7,638. I'm not going to take your old pay, add 20 percent and say that's what you should be making. I'm going to use the Department of Labor number, the 4,000 -- $7,463. You're a ten-year veteran of -- almost eleven years of Honolulu Police Department.
>
> . . . .
>
> This is a career you chose. It's not like a job at 7-Eleven or some place. This is a year, and right now things aren't going for you in your career, but this is something you chose to do, and so for purposes of calculating your child support, I'll be imputing your income at $7,463. . . .
>
> I want to note under Hawaii child support law, even if you request to reduce your child support, sometimes it gets increased. I'm going to be preparing a written order consistent with what I just said. . . .

On November 5, 2018, the Hearing Officer filed the Administrative Findings and Order that, *inter alia*, imputed $7,463 as Father's gross monthly income, and calculated Father's monthly child support obligation as $922 per child, totaling $1,844 per month commencing September 1, 2018. The monthly total increased to $1,862, commencing November 1, 2018, as a result of a credit to Mother for Children's insurance coverage. The Administrative Findings and Order included the following "Additional Findings and Order:"

> 1. In the Divorce Decree filed on March 29, 2016, the Family Court awarded [Mother] primary physical custody of the subject children with [Father] to pay child

support in the amount of $720.50 per child per month in the sum total of $1,441.00.

2. The child support calculation was based in part on [Father's] monthly-gross-income being found to be $6,318.00.

3. [Father] was employed by [HPD] at the time the Family Court established his child support obligation.

4. [Father] left his position at HPD to join the Federal Way Police Department ("Federal Way") in the state of Washington. [Father's] start date with Federal Way was July 1, 2018.

5. On August 13, 2018 [Father] was [sic] employment with Federal Way was terminated.

6. [Father] submitted an APPLICATION FOR SERVICES dated August 14, 2018 requesting to "change/modify the amount of child support" due to being "released from employer; unemployment."

. . . .

10. Following his termination with Federal Way [Father] made efforts to become gainfully employed.

11. [Father] testified that he is currently employed providing security for a hotel/casino and that his monthly gross income is $2,817.00.

12. [Father] requested that for purposes of calculating child support that [h]is current income be used. [Mother] objected.

13. [Mother] requested that [Father's] monthly gross income be imputed.

14. CSEA reported that according to the State of Hawaii's Department of Labor that [Father's] monthly gross income for the first and second quarters of 2018 was $7,463.00 while he was still employed by HPD.

15. Income may be imputed when a parent is not employed full-time or is employed below full earning capacity. See Hawaii Child Support Guidelines ("Guidelines") page 20.

16. The reasons for a parent not being employed full-time or employed below full earning capacity must be considered. See Guidelines page 20.

17. [Father] testified that he left HPD and Hawaii voluntarily to work for Federal Way.

18.    [Father] was terminated by Federal Way after failing to successfully complete probation as a police officer.

19.    [Father] testified he worked for HPD for over ten years and desires to continue to work in law enforcement as a police officer.

20.    While [Father's] situation is disheartening it does not discharge [Father] from his obligation to be employed at his full earning capacity.

21.    [Father's] request to calculate his child support obligation utilizing his current pay providing security is denied.  [Father's] monthly gross income is imputed at $7,463.00, which is the amount he was earning while employed by HPD earlier this year.

22.    Applying the foregoing findings to the Guidelines [Father's] child support increases from $1,441.00 to $1,844.00 from September 1, 2018 through October 31, 2018 and then to $1,862.00 on November 1, 2018.

(Hearing Officer's citations to supporting documents omitted).

On December 5, 2018, Father timely filed a Notice of Appeal to the Family Court.  On June 25, 2019, Father filed an opening brief in which he argued, *inter alia*, that the Hearing Officer deviated from the Guidelines and erred in not using Father's actual income and that there was no basis found by OCSH to support imputing Father's income at an amount he previously earned with HPD.  Father provided that he continued employment as a police officer with FWPD, after leaving HPD, until he was involuntarily terminated by FWPD.  Father also pointed to evidence showing his numerous attempts to continue employment as a police officer, but that he had been unsuccessful in finding such employment after he was terminated by FWPD.  Father argued that it was error for the Hearing Officer to impute his income

because it was beyond Father's control that he could not maintain a police officer job despite his attempts to do so.

On August 1, 2019, CSEA filed an answering brief in which it took no position. Mother filed an answering brief, arguing that, under the Guidelines, the Hearing Officer did not err in imputing Father's income. Father filed a brief reply.

On August 19, 2019, the Family Court filed the Decision and Order. In assessing Father's request for a modification of his child support obligation based upon a material change in circumstances and income, the Family Court emphasized that, when he became unemployed, Father quickly made efforts to find a comparable law enforcement job, and applied to multiple police departments, but was rejected from one position, did not receive official offers from three others, and had no guarantees of employment with another department. The Family Court noted that Father was given a written offer for a full-time security guard position a little less than two months after he was terminated from FWPD, albeit at a gross monthly income of roughly $2,817. The Family Court cited the statutory framework mandating the utilization of the Guidelines in setting and modifying child support orders, and pointed to the principles outlined in both the statutes and the Guidelines that "each parent is entitled to keep sufficient income for his or her basic needs and to facilitate continued employment, each child's basic needs are met

before the parents retain any additional income, the basic needs of each child includes the cost of child care and the child's health insurance, and if income is available after the basic needs of the parents and the children are met, each child is entitled to share in any additional income of the parents so each child can benefit from both parents' higher standard of living."

The Family Court explained that unless there are exceptional circumstances, the statutory framework and the Guidelines must be followed, and that exceptional circumstances may exist in a broad range of scenarios, including when a parent is unable to earn income or when the child support exceeds 70% of the parent's net income. The Family Court stated that a deviation from the Guidelines' calculation based on exceptional circumstances is discretionary, but even then, the Guidelines must be used to determine the amount of child support before a deviation from that amount based on exceptional circumstances may be permitted.

The Family Court reviewed the Guidelines' provisions allowing a request for modification of child support based on a material change in circumstances and the statutory presumption that a material change in circumstances exists if child support, as calculated pursuant to the Guidelines, is either ten percent greater or less than the previously-ordered support. The Family Court also noted that imputed income may be used to calculate

16

child support when a parent is employed below full earning capacity, but that the Guidelines require consideration of the reasons for a parent's income falling below his or her income capacity in the local job market, as well as that a parent's total support obligation should not exceed his or her monthly net income.

The Family Court concluded that the Hearing Officer clearly erred in calculating Father's child support obligation by using an imputed income for a job as a police officer that Father currently is unable to secure or hold. The Family Court noted that the issue is whether Father being unqualified to continue employment in law enforcement after his move to Washington State was sufficient reason for the limitation on his earning capacity. The Family Court noted that Father had not anticipated any issue with meeting the standards for the FWPD position, after holding an equivalent position with HPD for over ten years. The Family Court reiterated Father's desire and unsuccessful attempts to secure lateral employment and, after two months without an offer, he started a job that he was qualified for as a security guard, at a lesser salary. The Family Court concluded that the Hearing Officer erred in denying Father's request to use his current salary, rather than imputing income based on his previous salary, due to the fact that Father was unqualified to perform as a police officer in Washington State.

The Family Court also noted that a child support obligation of greater than 70% of a parent's net income has been found to be an exceptional circumstance.  The Family Court found that Father met his burden of proof, showing the existence of an exceptional circumstance warranting departure from the child support awarded pursuant to the Decree and the Proposed Order, again noting Father's timely and good faith efforts to find another law enforcement job after his termination from FWPD.  The Family Court noted that the Hearing Officer set Father's child support obligation at roughly 171% of his net income and that imputing Father's income based on what he previously earned as a HPD officer denied him the ability to keep sufficient income for his basic needs.

Finally, the Family Court found there was nothing in the record to show that Father was actively trying to discharge his responsibility and abandon his obligation to financially support the Children.  In other words, Father was not purposely underemploying himself to skirt his child support obligation, but was terminated from his job for being unqualified and was unable to get hired at a comparable job, notwithstanding timely and good faith efforts.

Accordingly, the Family Court ordered that the Administrative Findings and Order be vacated and the case be remanded to OCSH for the calculation of Father's monthly child

support obligation using Father's current gross monthly income. The Judgment was also entered on August 19, 2019, and Mother timely filed a Notice of Appeal.

II.   POINTS OF ERROR

Mother raises four points of error on appeal, contending that the Family Court:  (1) erred in not giving appropriate deference to the Hearing Officer's decision regarding Father's income; (2) erred in vacating the Hearing Officer's finding that Father's income should be imputed; (3) improperly found that the Hearing Officer erred by not evaluating the need for an exceptional circumstance deviation not raised in the initial hearing; and (4) erred by raising *sua sponte* and making a determination on the existence of an exceptional circumstance not raised at the initial hearing.

III. APPLICABLE STANDARDS OF REVIEW

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in [Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012)] to the agency's decision.

Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120–21, 424 P.3d 469, 475–76 (2018) (citation omitted).

We review a decision made by the Family Court upon its review of an agency decision applying this same standard; in this secondary appeal, we must determine whether the Family Court was

right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision.

HRS § 91-14(g) provides:

**§ 91-14   Judicial review of contested cases**.  . . .

(g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority or jurisdiction of the agency;

(3)     Made upon unlawful procedure;

(4)     Affected by other error of law;

(5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As the appellate courts have often articulated:

"An agency's conclusions of law are reviewed *de novo*, while an agency's factual findings are reviewed for clear error[.]" Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL–CIO, 112 Hawaiʻi 489, 499, 146 P.3d 1066, 1076 (2006) (citations omitted).  A finding of fact is clearly erroneous when "(1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." Id. (internal quotations omitted) (quoting In re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000)).  "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Del Monte, 112 Hawaiʻi at 499, 146 P.3d at 1076 (internal quotations omitted) (quoting In re Water Use Permit, 94 Hawaiʻi at 119, 9 P.3d at 431)).

Martinez v. State Bd. of Nursing, 137 Hawaiʻi 83, 87–88, 365 P.3d 1012, 1016–17 (App. 2016).

It is an abuse of discretion if a family court or administrative agency bases its discretionary ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  See Jacoby v. Jacoby, 134 Hawaiʻi 431, 442, 341 P.3d 1231, 1242 (App. 2014).

Decisions determining what is an exceptional circumstance authorizing a deviation from the Child Support Guidelines are conclusions of law reviewed *de novo* under the right/wrong standard of review.  Child Support Enf't Agency v. Doe, 104 Hawaiʻi 449, 455, 91 P.3d 1092, 1098 (App. 2004). Decisions whether to order deviations to child support, as such support is calculated using the Guidelines, are discretionary decisions reviewed under the abuse of discretion standard of review.  Id.

IV.  DISCUSSION

Mother argues that the Family Court erred in vacating the Hearing Officer's determination of Father's monthly child support obligation because the Family Court should have deferred to the Hearing Officer's finding that Father's income should be imputed at the amount he made during his final six months with HPD.  Mother further contends that the Family Court erred in determining that the Hearing Officer clearly erred in not

21

considering the existence of an exceptional circumstance in this case, *i.e.*, that the Hearing Officer's imputation of income resulted in the Hearing Officer setting Father's monthly child support obligation at an amount which is roughly 171% of Father's net income (as calculated from his gross income using the Guidelines), thus denying Father the ability to keep sufficient income for his basic needs.  Mother does not challenge the Family Court's determination that there is nothing in the record to support that Father is actively trying to discharge or abandon his responsibility and obligation to financially support his children.

> A.    Father's Request to Modify Child Support

HRS Chapter 576D establishes the CSEA, provides for the establishment of the Guidelines, and addresses other matters related to securing and enforcing child support.[5]  HRS § 576D-7(e) (2018) provides the right to petition either the Family Court or CSEA for a review and modification of a child support order:

---

[5]    As referenced in the beginning of this Opinion, this decision is based on the 2014 Child Support Guidelines, which were in effect at all relevant times.  We recognize, however, that the 2020 Hawaii Child Support Guidelines (**2020 Guidelines**) went into effect on November 1, 2020.  See Child Support Guidelines, https://www.courts.state.hi.us/child-support-guidelines (last visited June 9, 2021).  While some of the provisions discussed herein have been amended, it appears that this Opinion can be construed as in harmony with the 2020 Guidelines.

> **§ 576D-7  Guidelines in establishing amount of child support.**
>
>         . . . .
>
>         (e)  The responsible or custodial parent for which child support has previously been ordered shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances.  The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of the child support order more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

HRS § 576D-7(e) (2018); see also HRS § 580-47(e) (2018) (parallel provision in the divorce statute).

With respect to administrative child support proceedings, HRS § 576E-14 (2018) provides, in relevant part:

> **§ 576E-14  Modification, suspension, or termination of court and administrative orders**.  (a)  The responsible parent, the agency, or the person having custody of the dependent child may file a request for suspension, termination, or modification of the child support provisions of a Hawaii court or administrative order with the agency.  Such request shall be in writing, shall set forth the reasons for suspension, termination, or modification, including the change in circumstances since the date of the entry of the order, and shall state the address of the requesting party.  The agency shall thereafter commence a review of the order and, if appropriate, shall commence administrative proceedings pursuant to sections 576E-5 through 576E-9.  The need to provide for the child's health care needs through health insurance or other means shall be a basis for the agency to commence administrative proceedings pursuant to section 576E-5.
>
>         (b)  Only payments accruing subsequent to service of the request on all parties may be modified, and only upon a showing of a substantial and material change of circumstances.  The agency shall not be stayed from enforcement of the existing order pending the outcome of the hearing on the request to modify.
>
>         (c)  The establishment of the guidelines or the adoption of any modifications made to the guidelines set forth in section 576D-7 may constitute a change in circumstances sufficient to permit review of the support

order.  A material change of circumstances will be presumed if support as calculated pursuant to the guidelines is either ten per cent greater or less than the support amount in the outstanding support order.  The most current guidelines shall be used to calculate the amount of the child support obligation.

(d)  The responsible parent or custodial parent shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a change in circumstances.  The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment of child support more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.

Thus, under Hawaii's statutory scheme, either the responsible parent or the custodial parent is entitled to a review and reassessment of a child support order once every three years, without having to show a change in circumstances.  HRS §§ 576D-7(e), 580-47(e), & 576E-14(d).  In addition, either the responsible parent or the custodial parent may request a modification of child support in a lesser period of time, but then the requesting party must show proof of a substantial or material change in circumstances.  Id.  As set forth in HRS § 576E-14(c), a material change of circumstances will be presumed if child support as calculated pursuant to the Guidelines is either ten percent greater or lesser than the support provided for in the outstanding order.

Accordingly, upon receipt of a written request for modification of a child support order, CSEA must first determine whether it has been three years since the last child support

order.  If it has been three years or more, then the requesting party is entitled to petition for a review and possible adjustment of the existing child support order, even without a material change in circumstances.  See P.O. v. J.S., 139 Hawaiʻi 434, 439-40, 393 P.3d 986, 991-92 (2017) (holding that an individual "is entitled" to child support review every three years without showing changed circumstances).  If three years have not passed since the last child support order, the requesting party may nevertheless request a review, but must demonstrate a substantial or material change in circumstances to support an adjustment.

HRS § 576E-14(c) further provides that, if a party requesting a modification submits evidence that a calculation of child support pursuant to the Guidelines would result in child support that is either ten percent greater or lesser than the child support provided for in the prior order, then there is a presumption in favor of the requesting party that there has been a material change in circumstances.  Therefore, in the first instance, when presented with evidence of a requesting party's substantial decline in income, CSEA must consider whether a present calculation of child support under the Guidelines would result in child support that is either ten percent greater or lesser than the child support provided for in the prior order.  CSEA is not free to ignore the statutory presumption, although

the presumption is not necessarily determinative of whether a child support modification is ultimately ordered. If a parent presents evidence of income that results in a child support calculation that is ten percent greater or lesser than the support provided for in the outstanding order, then the burden of proof shifts to the other parent to rebut the presumption of a material change in circumstances.

The statutes governing the administrative process for child support enforcement, set forth in HRS chapter 576E, require CSEA and the OCSH Hearings Officers to follow the Guidelines, as well as the statutory mandates. HRS § 576E-15 (2018) states:

> **§ 576E-15  Guidelines to be followed.** When an administrative order establishes or modifies the amount of child support required to be paid by a party, the guidelines established under section 576D-7 shall be applied, except when exceptional circumstances warrant departure. The most current guidelines shall be used to calculate the amount of the child support obligation.

See also HRS § 576D-7(b) (2018) (providing, *inter alia*, that the Guidelines are to be applied statewide and must be considered by family court judges in establishing each support order).

Section IV of the Guidelines, entitled Modifying Child Support, implements the above-referenced statutes. Guidelines at 17. Section IV of the Guidelines states:

> A. **GENERAL CONSIDERATIONS.** A request for suspension, termination, or modification of child support may be filed either with the Court or CSEA. Child support may increase even when the request is for a decrease, and it may decrease even when the request is for an increase. The most current Guidelines shall be used to calculate the modified child support obligation.

      **B.**     **REQUEST TO REVIEW AND POSSIBLY MODIFY.** A parent has a right to request that the Court or CSEA review and possibly adjust child support not more than once every three (3) years without having to show a change in circumstances.

      **C.**     **WHEN A REQUEST TO MODIFY MAY BE MADE.** A party may request modification:

      1.     When at least three years have passed since the existing child support order was filed;

      2.     When a change in the circumstances of the parties and/or the subject children is substantial and material enough to justify a new child support amount (for example, a change in income, a change in child custody, or a change in the number of children eligible for child support); or

      3.     When existing Guidelines are replaced or modified.

      **D.**     **PRESUMPTIONS REGARDING MODIFICATION.** The change in circumstances is presumed to be sufficient to modify child support if the new calculation is ten per cent (10%) higher or lower than the existing child support obligation.

Id. at 17 (footnotes omitted).

Pursuant to Section IV.C.2. of the Guidelines, the first example given for a substantial and material enough change to justify a modification to child support is a change in a parent's income. Id. Thus, the drafters of the Guidelines understood and anticipated that a parent's income may be subject to material changes that can affect their ability to pay child support, either positively or negatively, and set up a process through which an affected parent could seek to address the altered circumstances. Section IV.D. reflects the statutory presumption that a change in circumstance is sufficient to warrant modifying child support if a new calculation results in

27

support that is ten percent higher or lower than the existing support obligation. Id.

In addition, before we turn to the circumstances of this case, it is important to note (as the Family Court did), that the Guidelines are expressly based on the following principles:

- Each parent is entitled to keep sufficient income for his or her basic needs and to facilitate continued employment.

- Each child's basic needs are met before the parents retain any additional income.

- The basic needs of each child includes the cost of child care and the child's health insurance.

- If income is available after the basic needs of the parents and the children are met, each child is entitled to share in any additional income of the parents so each child can benefit from both parents' higher standard of living.

Guidelines at 1.

As the Family Court recognized, these principles are intended to inform the family courts, the CSEA and OCSH, and the appellate courts of how we are all supposed to understand and apply the Guidelines.

Here, it does not appear that the Hearing Officer properly utilized the above-referenced framework when he denied Father's request to decrease his support obligation due to the change in Father's income, and instead, increased the child support obligation. Near the very beginning of the hearing, the Hearing Officer said to Father, who was not represented by

counsel at the time, "So, father, you're the person who applied for services with CSEA.  You bear the burden of proof, the burden of persuasion."  While this was not entirely wrong, it did not reflect the process called for in the above-referenced statutes and Section IV of the Guidelines.

The Hearing Officer did not, for example, note that it had been less than three years since the Decree established Father's existing child support obligation.  Nor did the Hearing Officer's statement reflect that Father's burden was to establish a change in the circumstances that was substantial and material enough to justify a new child support amount.  Perhaps most importantly, the Hearing Officer's statement did not reflect or in any way acknowledge the statutory presumption that is addressed in Section IV.D. of the Guidelines, *i.e.*, that "[t]he change in circumstances is presumed to be sufficient to modify child support if the new calculation is ten per cent (10%) higher or lower than the existing child support obligation."

It appears from the record that, at this point, CSEA and the Hearing Officer had before them undisputed evidence that Father's gross monthly income had in fact fallen to $2,817, as confirmed by Navor's summary report to the Hearing Officer and Father's testimony, and as reflected in the Administrative Findings and Order.  While it appears from Navor's report that CSEA may have run Guidelines calculations based on Father's

actual income, they were not submitted as part of the record of the proceedings. It is nevertheless clear from a review of the Guidelines that Father's change of gross monthly income from $6,318, at the time of the Decree, to $2,817, at the time of the hearing, resulted in a calculation of child support that was more than ten percent lower than the existing support order. Thus, Father was entitled to a presumption that the change in circumstances was sufficient to warrant modification of child support. While entitlement to a presumption does not equate with entitlement to a particular outcome, it should be clear from the record that the presumption was considered pursuant to the Guidelines, and the rationale for concluding that the presumption was rebutted should be clear as well.

In his oral ruling, the Hearing Officer strayed even further from the regular process set forth in the Guidelines when he stated, "Parents which is [sic] requesting exceptional circumstances have the burden of providing proof of the exceptional circumstance, and those are determined on a case-by-case basis." First, at no point in the CSEA/OCSH proceedings did Father argue that his request for relief was based on "exceptional circumstances." Second, a possible modification of child support due to a substantial or material change in a parent's income is – for lack of a better word – an ordinary consideration; in other words, it is one that is

expressly contemplated in Section IV of the Guidelines, which states specific guidance as to what is substantial and material. See Guidelines (Section IV.D.) at 17. Accordingly, when a parent's change of income is the reason a request for modification of child support is made, that request should in the first instance be considered to be a request in the regular course, pursuant to Section IV of the Guidelines. The record is devoid of any explanation for the Hearing Officer's reference to the burden of proof for an exceptional circumstance.

Mother argues, *inter alia*, that the Guidelines must be applied and, under the Guidelines, the Hearing Officer "had the authority" to impute income to Father in excess of Father's actual income "prior to" completing the CSG Worksheet (*i.e.*, the worksheet used to calculate the parties' support obligations here). This argument states three propositions, the first one being the axiomatic statement that the Guidelines must be applied. The second proposition, that the Hearing Officer "had the authority" to impute income to Father in excess of Father's actual income, is not necessarily wrong as a matter of law, but requires further examination. The final proposition, that the Guidelines support imputing income to a parent "prior to" completing a CSG Worksheet, also requires further examination.

"Imputed income" is a term that is discussed in Section V.J.3. of the Guidelines, which describes when imputed income *may*

*be* utilized.  Guidelines at 20-21.  However, the discretionary utilization of imputed income to calculate child support is the exception, not the rule, in the determination of child support under the Guidelines, as well as under the statutory scheme.

The Guidelines begin with Section I, entitled Introduction, which sets forth the fundamental principles (quoted above) that the Guidelines are designed to carry out.  Section I concludes with the statement that "[t]hese Guidelines provide a standard method for determining child support while allowing limited variations based on the specific circumstances of each family."  Guidelines at 1.  This charge stems from the Guidelines' enabling statute, which mandates that the Guidelines shall be applied statewide and drafted "[t]o simplify the calculations as much as practicable."  HRS § 576D-7(b)(1)&(2); cf. HRS § 576E-15 (exceptional circumstances warranting departure by administrative agency); HRS § 571-52.5 (2018) (exceptional circumstances warranting departure by family court).

Section II of the Guidelines introduces the CSG Worksheet, and describes the steps to complete the basic calculations of child support, which begin with each parent's monthly gross income, pointing to Section V.J.1.  Guidelines at 1.  Section V.J.1. broadly defines gross income as income from all sources, and sets forth a long list of sources to be included in gross income.  Id. at 19-20.  Section V.J.2. identifies a

narrow list of exclusions to gross income, which could be fairly described as spousal support and specific forms of government aid. Id. at 20. Section V.J.3. then described the two limited circumstances in which income *may be* imputed and how a parent's income will be determined in those circumstances. Id. at 20-21.

Accordingly, pursuant to the overarching mandate in the underlying statutes as well as in the Guidelines themselves, the standard method for determining child support, which involves completing a CSG Worksheet using the parents' actual monthly gross income should be the starting point in every case.[6] As intended, this standardized first step provides the parents and the decision-maker with a baseline of calculations arising out of the parents' actual circumstances at the time of the calculation. While in limited circumstances, imputed income ultimately may be used to calculate support obligations, the basic calculation is nevertheless necessary to the decision-maker's consideration of the issue of imputed income. Accord P.O. v. J.S., 139 Hawaiʻi at 444, 393 P.3d at 996 (holding that the standard CSG Worksheet calculations must be completed prior to considering whether exceptional circumstances permit deviation from the result of those calculations).

---

[6] There are permutations of the basic child support calculation, which are based off of the completed CSG Worksheet, including for extensive time-sharing, equal time-sharing, and split-custody arrangements. See Guidelines at 4-8. Such circumstances are not present in this case, and therefore, they are not discussed.

The basic CSG Worksheet calculation would, for example, inform the parties and the decision-maker of the actual parents' monthly *net* income (as calculated under the Guidelines).  We hold that this information, along with other information concerning the parents' and children's financial and other circumstances, must be considered in conjunction with the consideration of a request to impute income.  Thus, we reject Mother's argument that, under the Guidelines, the Hearing Officer properly imputed income in excess of Father's actual gross monthly income prior to completing or considering a CSG Worksheet based on Father's actual gross monthly income.

Mother also argues that the Family Court improperly substituted its own evaluation of the evidence when it determined that the Hearing Officer clearly erred in calculating Father's child support obligation by using imputed income in this case.  This argument invites a careful examination of Section V.J.3. of the Guidelines, which states:

> **IMPUTED INCOME** may be used when a parent is not employed full-time or is employed below full earning capacity.  The reasons for this limitation must be considered.
>
> If a parent's income is limited in order to care for children to whom the parents owe a joint legal responsibility, at least one of whom is 3 years of age or younger, then no additional income will be imputed to that parent.  If all of the subject children are over 3 years of age, and the parent who receives support is mentally and physically able to work, and remains at home and does not work, then thirty (30) hours or less of weekly earnings at the minimum wage may be imputed to that parent.[42]
>
> If a parent's income is limited for any other reason, the parent's income will be determined according to his or her

> income capacity in the local job market, considering both the reasonable needs of the children and the reasonable work aspirations of the parent.[43]
>
> [42]    See § 576D-7(a)(9).
>
> [43]    Cleveland v. Cleveland, 1 Haw. App. 187, 616 P.2d 1014 (1980).

Guidelines (Section V.J.3.) at 20-21, 24 (format altered).[7]

Accordingly, the consideration of imputed income has three parts.  The first part provides that imputed income "may" be used in one of two circumstances:  (1) when a parent is not employed full-time; or (2) when a parent is employed below "full earning capacity."  Id. at 20.  In both instances, imputed income is plainly discretionary.  The Guidelines indicate that the decision-maker "may" in one of these circumstances, enter a support order that is not based on a parent's actual income, but it is not a mandate.  Id.  The Guidelines further provide that "[t]he reasons for this limitation must be considered," echoing the intent of the Guidelines to apply the standard calculations in the vast majority of cases, and providing that even if a parent's employment situation falls below full earning capacity, the reasons for the limited employment must be considered.  Id. (emphasis added).  In context, this supports the conclusion that

---

[7]    We note that the 2020 Guidelines, like the 2014 Guidelines, provide that income may be imputed only when a parent is not employed full-time or is employed below full earning capacity.  2020 Guidelines at 20. However, the 2020 Guidelines include an expanded list of special circumstances (factors) that must be considered.  Id.

imputed income is the exception, not the rule, even when one of the two circumstances arises, and we so hold.

The second part deals with the specific situation of a custodial parent staying home to care for one or more of the parties' children to whom they owe a joint legal responsibility. Id. If there is a child 3 years of age or younger, no additional income will be imputed. If the child or children are older, and other specified facts are demonstrated, then earnings for thirty hours or less, at minimum wage, *may* be imputed to the stay-at-home parent. Id. Although not applicable to this case, we note this as one of the two circumstances that may support imputed income, and further note that this is the only circumstance that is directly supported by statute. As referenced in footnote 42 of the Guidelines, HRS § 576D-7(a)(9) provides that the Guidelines may include a consideration that "[i]f any obligee parent (with a school age child or children in school), who is mentally and physically able to work, remains at home and does not work, thirty (or less) hours of weekly earnings at the minimum wage may be imputed to that parent's income."

The third part is plainly intended to apply after a determination that a parent is "employed below full earning capacity" for any reason other than care of a joint child, and after the reasons for the limited employment – *i.e.*, below full earning capacity – are considered. Guidelines at 20-21. It

states that in that situation, the parent's income will be determined – *i.e.,* may be imputed to be an amount different than his or her actual income – according to three factors:   (1) the parent's income capacity in the local job market; (2) the reasonable needs of the children; and (3) the reasonable work aspirations of the parent.   Id. at 21.   We note that the authority identified in the Guidelines for this alternative basis for imputed income is an Intermediate Court of Appeals (**ICA**) case, Cleveland v. Cleveland, 1 Haw. App. 187, 616 P.2d 1014 (1980), not a statutory provision.[8]

In Cleveland, the obligor-father argued that a family court's child support order must be based on the payor's present ability to pay child support.   Id. at 191-92, 616 P.2d at 1017. The ICA rejected the father's argument and held:

> We hold that in ordering child support, **the family court may consider what the payor is capable of earning if the payor attempts in good faith to secure proper employment**, where the payor is temporarily unemployed or is engaged in work from which the payor does not receive the amount he or she is **capable of earning** in other fields of endeavor.
>
> We further hold that the court may consider the size of the payor's estate and his or her net worth.

Id. at 192, 616 P.2d at 1017 (citations omitted; emphasis added).

---

[8]      While not referenced in the Guidelines, and while not as specific as HRS § 576D-7(a)(9), HRS § 576D-7(a)(2) provides that the guidelines established by the family court may include consideration of "[t]he earning potential, reasonable necessities, and borrowing capacity of both parents."

Various aspects of the ICA's analysis in Cleveland do not square up with the standardized determinations of child support under the Guidelines, which were adopted years after the Cleveland decision. Nevertheless, the drafters of the Guidelines expressly embraced the ICA's holding that the family court (or administrative agency) *may* consider "what the payor is capable of earning if the payor attempts in good faith to secure proper employment." Id. (emphasis added). In Cleveland, although the father previously practiced law, he was not actively seeking employment as an attorney and preferred farming. Id. at 190, 616 P.2d at 1016.

In this case, the Hearing Officer properly recognized that income may be imputed when a parent is employed "below full earning capacity" and that the reasons for being employed below full earning capacity must be considered. (Additional Findings 15 & 16). The Hearing Officer, however, did not find that Father was employed below full earning capacity or, put another way, did not find that Father was in fact capable of making the salary he formerly made, but did not attempt in good faith to secure "proper employment." Cf. Cleveland, 1 Haw. App. at 192, 616 P.2d at 1017. On the contrary, the Hearing Officer specifically found that Father's situation was "disheartening," obviously referring to Father's loss of a comparable job when he was terminated from

FWPD, and Father's subsequent inability to secure an equivalent job, notwithstanding evidence of attempts to do so.

The Hearing Officer's oral ruling further demonstrated that the Hearing Officer applied a harsh standard not intended when the drafters of the Guidelines incorporated the "below full earning capacity" concept from Cleveland into the consideration of imputed income. The Hearing Officer told Father, "[Y]our unemployment is not due to a disabled [sic] or an injury. It's due to choices you made and things didn't go well for you."[9] He continued with, "This is a career you chose. It's not like a job at 7-Eleven or some place. This is a year, and right now things aren't going for you in your career, but this is something you chose to do." In Cleveland, the ICA defined earning capacity in the context of what the father in that case could make if he attempted in good faith to secure proper employment. Here, the Hearing Officer disregarded the evidence of Father's good faith attempts and simply imputed an income that Father formerly was able to earn, without regard to whether he could still earn it. The Hearing Officer also disregarded the undisputed evidence that Father's "career choice" was to accept a lateral position at FWPD with a starting pay of $7,146, roughly the equivalent of his pay

---

[9] We note that inability to earn income due to disability or incapacity is identified in the Guidelines (Section II.B.2.b.vi.) as an example of a possible exceptional circumstance, although the presence or absence of such inability would also be a reasonable consideration in determining a parent's full earning capacity. Guidelines at 9.

when he left HPD. The Hearing Officer did not find Father's actions lacked good faith attempts to maintain his job as a police officer with FWPD or lacked good faith in his attempts to secure an equivalent position when he was unexpectedly terminated from FWPD.

In sum, we hold that the Hearing Officer's oral and written findings concerning the reasons for Father's decreased income were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and were affected by the Hearing Officer's erroneous view of the law with respect to imputed income, which we have discussed above. See HRS § 91-14(g) (standard for judicial review). Most importantly, the Hearing Officer failed to consider whether Father's financial circumstances stemmed from a lack of good faith efforts to maintain his income at a higher level, which is part of the standard for imputed income first established in Cleveland; and, there is no reliable, probative or substantial evidence in the record to support a finding of a lack of good faith efforts. See HRS § 91-14(g). Therefore, we conclude that the Hearing Officer clearly erred in finding that "[Father's] situation . . . does not discharge [Father] from his obligation to be employed at his full earning capacity."[10]

---

[10] The framing of this finding – in terms of whether Father is discharged from his obligation to be employed at full earning capacity – is

(continued...)

In addition, even if the Hearing Officer had properly determined that Father was employed below full earning capacity, the Hearing Officer failed to comply with Section V.J.3. (Imputed Income) of the Guidelines because the decision is not grounded in the three factors required by the third part of Section V.J.3.: (1) Father's income capacity in the local job market;[11] (2) the reasonable needs of the children; and (3) Father's reasonable work aspirations. Absent proper consideration of these factors, as well as the other legal standards addressed above, the Hearing Officer's imputation of income to Father was arbitrary and capricious, and a clearly unwarranted exercise of discretion affecting Father's substantial rights. See HRS § 91-14(g)(6). We hold that, prospectively, a decision to impute income to a

---

[10](...continued)
inconsistent with the proper analysis of imputed income pursuant to the Guidelines Section V.J.3. However, this is the principle finding underlying the Hearing Officer's decision to impute income to Father at a level that substantially exceeded his actual income.

[11] The Hearing Officer disregarded the Guidelines' direction to consider earning capacity in the local market. We note that Merriam-Webster's Collegiate Dictionary defines the adjective "local" as "of, relating to, or characteristic of a particular place: not general or widespread." *Local*, Merriam-Webster's Collegiate Dictionary 682 (10th ed. 1998). Black's Law Dictionary does not include a stand-alone definition of "local," but instead lists definitions for "local" plus some other word (such as "local custom"); however, Black's defines "locality" as "a small area of a city, county, or state; vicinity; neighborhood; community." *Locality*, Black's Law Dictionary 1125 (11th ed. 2019). In Haflich v. Haflich, 109 Hawaiʻi 103, 112-13, 123 P.3d 698, 707-08 (App. 2005), the ICA held that the family court erred in imputing the mother's hourly income because, *inter alia*, "[i]t is not reasonable to assume a person who has a job offer in Maine for $12.00 per hour also has a job offer in Maui, Hawaiʻi, for $12.00 per hour." In other words, the ICA held that the family court erred in failing to consider the mother's earning capacity where she lived, *i.e.*, her earning capacity in her local job market, as opposed to what she could earn if she lived elsewhere.

parent based on employment below full earning capacity must be accompanied by findings of fact concerning: (1) the determination that a parent is employed below full earning capacity; (2) the reasons for the limited employment; <u>and</u> (3) the factors that must be utilized in the determination of the amount of the imputed income – *e.g.*, income capacity in the local job market, the reasonable needs of the children, and the reasonable work aspirations of the parent.

For the reasons stated herein, we hold that the Family Court was correct in concluding that the Hearing Officer clearly erred and abused his discretion by using an imputed income based on Father's former employment with HPD.

B.    Exceptional Circumstances

Mother argues that the Family Court erred in finding that an exceptional circumstances deviation was warranted because (a) Father never raised the question of exceptional circumstances, and (b) the Hearing Officer "had no obligation to specifically identify each and every consideration of all possible exceptional circumstances in his decision."

A family court or an administrative hearing officer may order child support that deviates from the Guidelines only if exceptional circumstances warrant such deviation. HRS § 576E-15 (exceptional circumstances warranting departure by administrative agency); HRS § 571-52.5 (exceptional circumstances warranting

departure by family court).  As noted above, a determination concerning the existence of an exceptional circumstance authorizing a deviation from the Guidelines child support calculation is a conclusion of law, but a decision whether to order a deviation based on the existence of an exceptional circumstance is an exercise of discretion.  CSEA v. Doe, 104 Hawaiʻi at 455, 91 P.3d at 1098.

Exceptional circumstances are addressed in the Guidelines, as part of Section II (Child Support Guidelines Worksheet), in Appendix C-1, which is the Exceptional Circumstances Form, and Appendices C-2 & C-3 (sample forms based on particular exceptional circumstances).  Section II of the Guidelines is organized into two parts:  Basic Calculations of Child Support; and Attachments, which is further broken down into two subsections explaining the Extensive Time-Sharing Worksheet and the Exceptional Circumstances Form.  The Exceptional Circumstances Form subsection (Section II.B.2 of the Guidelines) provides, in relevant part:

> **EXCEPTIONAL CIRCUMSTANCES FORM.**  If exceptional circumstances exist, then enter an "X" on the CSG WORKSHEET and complete the EXCEPTIONAL CIRCUMSTANCES FORM.  The calculation of child support using the EXCEPTIONAL CIRCUMSTANCES FORM (Appendix C-1) is described below.  An automated form is available at the Judiciary's website (http://www.courts.state.hi.us).
>
> a.    **GENERAL CONSIDERATIONS**
>
> > i.    Presumptive Child Support Amount.  For the reasons stated in the Introduction to these Guidelines, the Court or OCSH must order the

amount of child support as calculated by the CSG WORKSHEET and/or EXTENSIVE TIME-SHARING WORKSHEET, unless there are exceptional circumstances that warrant a deviation.

ii. <u>Burden of Proof for Exceptional Circumstances</u>. The parent requesting the deviation has the burden of proving that exceptional circumstances exist and that the circumstances warrant a departure from the child support as calculated by the worksheets. The EXCEPTIONAL CIRCUMSTANCES FORM should be attached.

iii. <u>Determination on a Case-by-Case Basis</u>. The Court or OCSH shall determine whether exceptional circumstances exist on a case-by-case basis. The Court and OCSH have the discretion to determine to what extent exceptional circumstances, if found, will impact the amount of the child support.

iv. <u>Required Findings</u>. Whenever there is a deviation from the amount shown on the worksheets, the Court or OCSH shall make oral findings of fact on the record or prepare written findings of fact regarding the exceptional circumstances. The findings of fact shall include the amount of support that would have been required as calculated by the worksheets.

b. **EXAMPLES OF POSSIBLE EXCEPTIONAL CIRCUMSTANCES** include (without limitation) the following:

i. <u>Child Support Exceeds 70% of Net Income</u>. When child support is greater than 70% of the obligor's net income (as set forth in the Table of Net Incomes) (Appendix D), there may be an exceptional circumstance. A sample 70% of Net Income Request is attached as Appendix C-2.

Guidelines at 8-9 (footnote omitted).[12]

In light of the record in this case, Mother's assertions that (a) Father never raised the question of exceptional circumstances, and (b) the Hearing Officer "had no

---

[12] We note that the Exceptional Circumstances Form subsection of the 2020 Guidelines includes further specifically-required findings whenever there is a deviation from the presumptive amount of support under the Guidelines, including a required statement of the presumptive amount of support. 2020 Guidelines at 8-9.

obligation to specifically identify each and every consideration of all possible exceptional circumstances in his decision" are not susceptible to an unconvoluted review. First, we recognize that there is nothing in the record to indicate that Father himself raised the question of "exceptional circumstances," as such, in the CSEA and OCSH proceedings. Yet, at the hearing on Father's request for modification of child support, the Hearing Officer's oral ruling led with the concept of exceptional circumstances. The Hearing Officer stated:

> Parents which is [sic] requesting exceptional circumstances have the burden of providing proof of the exceptional circumstance, and those are determined on a case-by-case basis.

It is unclear why the Hearing Officer said this, but it seemed to follow from his earlier admonition to Father that, as the requesting party, Father bore the burden of proof and the burden of persuasion. It is possible that the issue of exceptional circumstances was somehow presented in one of the "four calculations" that Navor mentioned at the hearing, but did not make part of the record. It is possible that the Hearing Officer independently recognized that his imputation of income to Father would cause child support obligations to (vastly) exceed 70% of Father's net income and was attempting to communicate that Father nevertheless had the burden of persuading the Hearing Officer that the possible exceptional circumstance warranted a deviation from the child support calculation resulting from the

use of the imputed gross monthly income.  It is possible that the Hearing Officer misunderstood the legal framework for reviewing a request for modification of child support under Section IV of the Guidelines.  We decline to speculate as to the particular reason that the Hearing Officer raised the issue of exceptional circumstances, but he did.

It is difficult to find error in the Family Court's discussion of exceptional circumstances under these circumstances.  The Family Court did not – as Mother's argument implies – conclude that the Hearing Officer had "obligation to specifically identify each and every consideration of all possible exceptional circumstances in his decision."  The Family Court pointed out that it had found an exceptional circumstance exists when a support obligation exceeds 70% of a parent's net income, based on the Guidelines, and that it recognizes the burden of proving that an exceptional circumstance warrants a deviation from the CSG Worksheet calculations, as well as the discretionary aspect of a deviation.  The Family Court concluded that Father had met his burden of proof to show the *existence* of an exceptional circumstance that might warrant deviation.  As noted, the existence of an exceptional circumstance is determined as a conclusion of law, which was freely reviewable.  As the Family Court recognized, it is the decision to deviate that is discretionary.

However, as the Family Court had already concluded that the Hearing Officer erred in his use of imputed income, and in light of the insufficiency of the OCSH record with respect to the issue of exceptional circumstances, we conclude that the Family Court's further discussion of exceptional circumstances is best considered as *obiter dictum*.  We share the Family Court's concern that the Hearing Officer may have improperly disregarded that imputing Father's income, based on a job he could not maintain or secure, violated one of the Guidelines first principles – *i.e.*, that each parent is entitled to keep sufficient income for his or her basic needs.  However, the agency record contains no oral or written findings of fact and/or conclusions of law on the issue of exceptional circumstances, and the record is otherwise insufficient to review the issue.  Therefore, sitting in its role as a reviewing court under the authority of HRS § 91-14(g), we conclude that the Family Court erred in directly finding that Father met his burden and was entitled to a deviation based on exceptional circumstances.  Accordingly, if it were necessary for the Family Court to reach the issue of exceptional circumstances, the proper procedure would have been to remand to the agency for further proceedings, including on that issue.

V.    CONCLUSION

For the reasons we have stated in this Opinion, the Family Court's August 19, 2019 Judgment, which vacated the

November 5, 2018 Administrative Findings and Order entered in the

OCSH and remanded the case to OCSH, is affirmed.

On the briefs:

Seth R. Harris,
Caitlin N. Axe,
Kaitlyn K. Mark,
(Porter McGuire Kiakona &
 Chow, LLP),
for Appellee-Appellant.

Gregory L. Ryan,
Rosa Flores,
for Appellant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge